LUCAS, APPELLANT, *v.* COSTANTINI, APPELLEE.

(No. CA83-05-044—Decided December 30, 1983.)

Mr. Jim Rimedio, for appellant.
Mr. Richard L. Norton and Mr. Mark Alan Greenberger, for appellee.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Clermont County.

Appellant, Perry Lucas, initiated this action claiming that appellee, Helena Costantini, breached a building contract. Costantini denied the existence of the contract alleged by appellant and claimed that appellant had been fully paid for his work. After a trial by jury, a verdict in the amount of $7,000 was rendered in favor of appellant. Subsequent to the trial court's entry of judgment, appellant initiated this appeal.

Appellant asserts two assignments of error. The first attacks the propriety of certain jury instructions,[1] while the sec-

---

[1] Civ. R. 51(A) asserts a general rule that one is barred from raising errors in jury instructions unless specific objections are made "before the jury retires." In the case *sub judice*, the trial court requested that counsel hold their objections until after the charge was completed and the jury began its deliberations. Counsel for both parties agreed to this request.

One of the purposes of Civ. R. 51(A) is to permit the court, upon being persuaded by the arguments and objections of counsel, to reinstruct the jury before the jury can begin its discussions, if the court believes an error was made.

Indeed, even waiting until after the instructions are given before taking objections

ond argues that the verdict and judgment are manifestly against the weight of the evidence.

## I

### A

Lon Lucas, appellant's brother, and appellee were partners in a business venture in which appellee was to finance the construction and operation of a dinner club while Lon Lucas was to manage the business. Lon apparently also supervised the extensive renovation of a structure purchased by appellee to house the dinner club. Perry Lucas was initially hired by his brother to do minor work on the project. After Perry had worked for a short time, he claims that he entered into a contract with appellee to perform certain remodeling tasks. During appellant's direct testimony, the following colloquy transpired:

"Q. Please relate the conversation you had with [Costantini] with regard to the bid and the building, what you were going to do.

"A. [Costantini] asked me if I could build the kitchen, lay tiles on the floor, lay tiles around the bar, do some minor repairs, lay tiles in the bathroom, fix the ceiling in the dining room and the bathrooms and the kitchen, and work for half the bid, and I told her, yes, that I could do this work for half of Larcomb's bid. And that, she asked me if it would include the work that I had already done, and I told her yes.

"Q. Then, under your new contract, did you proceed to do work?

"A. Yes sir.

"Q. What did you do?

"A. Exactly what we talked about.

"Q. You did all those things?

"A. Yes sir."

The amount of "Larcomb's bid" was asserted to be $110,000 by both Lon and Perry Lucas. However, appellee denied that the entire conversation ever occurred and Charles E. Larcomb, the bidder referred to by Perry, could not recall the amount of his bid.

The trial court instructed the jury, in part, as follows:

"Contracts are either express or implied. In general, the only difference between an expressed and an implied contract is in the mode of proof. *We don't have an expressed contract here,* so I will not go into that. However, an implied contract may be implied from facts and circumstances established by a preponderance of the evidence.

"If the minds of the parties have met on any terms of agreement, there is a contract. And either it be expressed or implied, *but, in this case, there was no expressed contract."* (Emphasis added.)

The terms "express" and "implied" contracts are analytically misleading. From the titles, one might assume that there are important distinctions between that which is "express" and that which is "implied." This is not the case.

"Express" and "implied" contracts are both contracts. To recover on either, the proponent must prove that an agreement, based on a meeting of the minds of the parties and on mutual assent, existed, to which the parties intended to be bound. *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gaffney* (1901), 65 Ohio St. 104.

Express and implied contracts are to be distinguished from "quasi-contracts," or contracts "implied in law," which is

---

thereto can be harmful, not only because each juror will undoubtedly begin, in his or her own mind, to tie the facts and law together, but also because the trial judge, for whatever reason, may be less likely to be persuaded by counsel's objections and to acknowledge a potential error once he or she had publicly instructed the jury. While we do not condone the path agreed upon by the parties in this case, we do not believe that appellant's assignment of error can be dismissed, as appellee argues, for failing to strictly comply with Civ. R. 51(A), given the circumstances herein.

nothing more than a legal fiction, an equitable legal vehicle for obtaining a just result. *Gaffney, supra.* The existence of a quasi-contract does not depend on the intentions of the parties, as one may become an obligor without ever consenting to the creation of an obligation. *Gaffney, supra.*

If there is a distinction to be made between express and implied contracts, it is in the form of proof generally used to prove each. An express contract connotes a more formal exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound. A contract implied in fact may be proved by showing that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended. *Gaffney, supra.*

The most obvious example of the use of the implied contract concept occurs where a recovery is sought for services rendered or materials furnished and the circumstances are such that people expect to be paid and pay for such conduct. The law is said to "imply" an obligation on the part of a person who benefits from the services or materials received to pay for the services or materials. *Ashley* v. *Henahan* (1897), 56 Ohio St. 559, 574. However, the plaintiff must prove that the defendant either requested or assented to such conduct under conditions precluding an inference that the plaintiff acted gratuitously. *Gaffney, supra.*

However, even where an "express" contract is involved, the law "implies" an obligation from what is perceived to be the meaning of signals given, whether the parties communicated by written or spoken word or by some other means. In the law of contracts, we are trying to ascertain what an individual's subjective feelings were at a specific point in time. The words spoken or found on a piece of paper are merely communicative symbols and only serve to illuminate the terms to which the parties intended to be bound. In the final analysis, "express" and "implied" contracts are simply confusing labels for the term "contract."

In stating to the jury that there was no express contract in this case, the trial court erred. Appellant's testimony was that he and Costantini came to an agreement, albeit orally, as to exactly what appellant was going to do and how much he was to be paid for doing it. To this extent a *prima facie* showing of what is commonly called an "express" contract has been made. The terms to which the parties agreed to be bound were allegedly communicated and for the court to state that there was no express contract as a matter of law was erroneous.

The remaining issue is whether or not this characterization by the trial court in any way prejudiced appellant. We believe not.

The trial court's instructions properly stated that:

"The word 'contract,' in its legal sense, includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or perform a certain act * * *. If a promise is made upon one side and entered upon [*sic*] and acted upon by the other, this would be sufficient to make it a binding contract.

"* * * If the minds of the two parties actually come together at the time the promise was made, and the services were performed in consideration of that promise, this would be sufficient to make a good and binding and valid contract.

"If the minds of the parties have met on any terms of agreement, there is a contract."

The jury was adequately charged on the meaning of the word "contract" in its legal sense. As there is no substantive distinction between the labels of "express" or "implied" contracts either in definition or in the appropriate measure

of damages,[2] and as the jury was well aware that in order for appellant to recover it had to find that a contract existed between the parties, we cannot say that appellant was prejudiced by the jury instructions complained of where the jury returned a verdict in his favor.

Accordingly, appellant's first assignment of error cannot be sustained on this basis.

### B

Appellant next argues that the trial court erred in instructing the jury as follows:

"* * * If the Plaintiff substantially complied with the contract, except in some slight deviations, he would be entitled to recover the contract price *less the diminution in value to the owner on account of the deviation or what the building was actually worth, less an amount — an* [*sic*] *account of the departures.*" (Emphasis added.)

We agree.

Appellee admits that:

"Neither Defendant-Appellee nor Plaintiff-Appellant offered any testimony as to diminution in value * * *."

However, appellee argues that since there was no evidence of diminution in value, nothing could have been deducted by the jury pursuant to the court's formula for damages.

The issues in a case are defined by the scope of the evidence presented and the pleadings. *Hood* v. *New York, Chicago & St. Louis RR. Co.* (1957), 166 Ohio St. 529 [3 O.O.2d 12]. In the case at bar, there was neither a claim of nor evidence related to a diminution in value of the real property due to deviations from the contract, and to put this issue before the jury was erroneous. *Hood, supra.* In addition,

appellee argued below that appellant's work was substandard and presented expert testimony to substantiate this claim. In this regard, we cannot accept appellee's contention that the erroneous instruction was harmless.

Accordingly, on this basis, appellant's first assignment of error is well-taken and a new trial is required for this case.

### II

Appellant argues that the verdict and judgment below in his favor in the amount of $7,000 are against the manifest weight of the evidence. With this we must disagree.

Appellant testified that he worked one thousand eight hundred forty-seven hours on the project and that a contract price was agreed upon for his performance. Appellee's testimony was that appellant was hired at a rate of $4 per hour to perform the work.

This case was properly submitted to the jury and the result was sufficiently within the boundaries established by evidence presented and the inferences which may be drawn therefrom as to require this court to hold that the verdict and judgment are not against the manifest weight of the evidence. See, *e.g., Ancona* v. *Martin* (July 22, 1981), Clermont App. No. CA879, unreported; *C.E. Morris Company* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

Accordingly, appellant's second assignment of error is without merit and is hereby overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment herein ap-

---

[2] In cases where no fee was agreed upon, one alleging an "implied" contract is only entitled to the "reasonable value" of his work. *Wyse* v. *Refrigeration Sales Corp.* (App. 1955), 71 Ohio Law Abs. 67. Here, however, appellant alleged that a particular amount of money had been agreed upon and the court did not instruct the jury to determine the "reasonable value" of Lucas' services.

pealed from be, and the same hereby is, reversed and remanded for a new trial.

*Judgment reversed and cause remanded.*

KOEHLER, P.J., JONES and HOTTLE, JJ., concur.

HOTTLE, J., of the Court of Common Pleas of Highland County, sitting by assignment in the Twelfth Appellate District.