JOURNAL ENTRY AND OPINION
Appellant, Morganstern, MacAdams DeVito Co., L.P.A., appeals the trial court granting the separate motions for summary judgment filed by appellees, Yulish, Twohig Associates Co., L.P.A. (YTA), the Hilliard Building Partnership, Mark Twohig III, and Stanley Yulish. For the reasons that follow, we affirm the decision of the trial court.
In April 1999, appellant indicated a desire to purchase a property, the Hilliard Building (the Building), owned by appellees, the Hilliard Partnership. The Partnership was composed of two partners, Twohig and Yulish. At the time of the initial conversations between the parties, there was a pending arbitration between Twohig and Yulish, relating to the dissolution of the Hilliard Partnership. Yulish had withdrawn from the Partnership in December 1996, but in the spring of 1999, he hired realty broker, Harvey Kay (Kay), to sell the Hilliard Building. Appellant hired Arthur Volpe (Volpe) of Realty One, to assist it in the negotiation and purchase of the property. Correspondence between the parties indicates that appellant was aware that the partners' arbitration involved issues directly concerning Yulish and Twohig's mutual ownership interests in the Partnership and the division of Partnership assets between them, including the Building.
During May 1999, appellant forwarded three separate letters of intent expressing its desire to formalize a purchase agreement for the Building. Appellant knew that Yulish, owning a majority interest in the Building, would first have to resolve the dispute over his own Partnership interests before the property would be sold. Appellant's knowledge of the Partnership contingency is clearly memorialized in correspondence between it and Kay. In a letter of May 10, 1999, appellant indicated its interest in purchasing the Building, but noted its concern that the seller does not have the authority to sell the building * * * [and that] * * * there is pending litigation which has been submitted to arbitration involving the partners [sic] respective interest in the building which apparently has not been concluded. The letter goes on to state that:
 Buyer needs to be provided with either a written, signed counteroffer to our last offer, or written confirmation from an individual, entity or agent establishing that authority exists to sell the building, including the asking price.
In response, Kay wrote, in part,
 Please advise your Buyers that I reviewed all of the comments with the Seller, Stanley Yulish. Please be aware of the following: * * * Mr. Yulish is the controlling partner and the majority owner of the building. In order to present a clear title, he will have to settle the matter with his partner, which he will do if and when he accepts an offer from your Buyer. Should your Buyer still be interested in the purchase of the building, I trust we will be receiving a letter of intent very soon.
Then, again by letter, Kay wrote:
 I have discussed the above purchase once again with Yulish and Twohig, the Hilliard Building partners. Please be advised of the following:
a. They are firm in their price of $1,400,000.
 b. Mr. Twohig is very interested in staying in the building as a tenant for at least six months or more.
 c. We discussed the possibility of the Clinic moving, in which case, would your buyer be interested in having Mr. Twohig's law firm as a more permanent tenant somewhere in the building.
 Should your buyers think that they are interested in the above, please draw a new letter of intent as soon as possible. Please address items b and c in the letter. I believe that after the letter of intent is received the buyers and sellers along with us, should sit down and try to work out details so that we may agree on a formal purchase agreement.
Appellant claims that on May 26, 1999, appellees, as before, represented that (1) the pending arbitration would not impede the sale of the Building; (2) the law firm would move from the third floor to the second floor; and (3) the Building was for sale.
On May 28, 1999, appellant responded with its fourth Letter of Intent (Letter), which it claims constitutes the binding contract in the case at bar. In relevant part, the Letter states:
 After sitting down with the Sellers and discussing the terms of concern, a formal purchase agreement can be entered immediately after they execute this Letter Agreement which addresses the items Mr. Kay set forth in his May 20, 1999 letter. Specifically, we can accommodate Mr. Twohig's interest in staying as a tenant for six months or more. We will also discuss and can accommodate Mr. Twohig's law firm's and the Clinic's interest to remain as a more permanent tenant somewhere in the building.
 Therefore, please have your client execute this Letter Agreement so that we can coordinate a meeting between the Buyer and Seller as soon as possible.
 SELLER: Stanley Yulish and Mr. Twohig or their designee
* * *
 ACKNOWLEDGEMENTS: Both parties acknowledge and agree that this Letter of Intent is not a legally binding instrument and that material additional terms must be negotiated before a legally binding agreement is reached. This proposal is specifically conditioned upon the preparation, negotiation and execution of a Purchase and Sale Agreement in a form mutually acceptable to Seller and Buyer.
* * *
The Letter is signed by Seller: Mark M. Twohig III as Partner.
By July 1, 1999, appellant indicates its impatience in not having received a signed purchase agreement from Twohig and Yulish. By letter, appellant states in part:
 Thirty days have passed from the execution of the Letter of Intent. To date, a Purchase Agreement has not been signed by Sellers, although drafted, redrafted and executed by Buyers.
 Please be advised that Buyers consider the failure of Sellers to execute the Agreement a breach of the good faith provision of the Letter of Intent. There are no material terms left to be negotiated. Sellers' excuse for failure to perform is the controversy between the selling partners.
 There have been clear misrepresentations made directly by Sellers and through their agents as to the intent of Sellers' to perform as promised. It was represented that the dispute and arbitration between the Sellers would not effect [sic] the sale.
* * *
 Buyers will extend a courtesy of one week from this date to receive the executed Purchase Agreement before commencing an action.
* * *
Its actions following its presentation of the Letter of Intent, appellant argues, show that it had consummated a binding contract with appellees. For example, appellant deposited $10,000.00 in an escrow account and drafted and revised various proposed lease agreements related to the YTA law firm.[1] Appellant also sent proposed purchase agreements to appellee Yulish and to appellees Twohig, and the Hilliard Partnership. None of the appellees ever returned or executed any of the proposed purchase agreements.
Then, on July 23, 1999, Stanley Morganstern, president of the law firm, and Twohig had a conversation in which Morganstern was told that Twohig was not going to do anything until the matter was resolved with Yulish. Appellees never did execute a purchase agreement related to the sale of the Hilliard Building.
Appellant filed its initial complaint and then filed an amended complaint for breach of contract, specific performance, and misrepresentation/fraud. The amended complaint named each of the appellees. YTA eventually filed a motion to dismiss the amended complaint, in which it argued that it could not be sued for breach since it was not a party to the alleged contract, that is, the Letter of Intent, nor had it made any misrepresentations. The trial court granted YTA's motion to dismiss the breach of contract claim but denied it as to appellant's fraud claims. Then appellees each filed motions for summary judgment, which the trial court granted.
In its order granting summary judgment in favor of appellees, the trial court stated, in part, that
 the Letter did not operate as a binding contract * * * and summary judgment is appropriate on the breach of contract and specific performance claims of the Plaintiff.
* * *
 It is also evident that there was no actionable fraud or misrepresentation because the Letter also provided that the Buyer will not rely upon any marketing materials or other printed information or verbal representations provided or made by Seller or Seller's broker prior thereto.
In the case at bar, appellant insists that the trial court erred in granting appellees' motions for summary judgment because there remains a genuine issue of material fact as to whether the parties intended to be bound.
 ASSIGNMENT OF ERROR NO. 1: The Trial Court Erred in Granting Appellees [sic] Motions for Summary Judgment on Appellant's Breach of Contract Claim As A Genuine Issue of Material Fact Exists As to Whether The Parties Intended To Be Bound By The Fourth Letter of Intent.
The fourth Letter of Intent, according to appellant, constitutes a binding contract and imposed an obligation to negotiate the sale of the Building in good faith upon appellees.
Rule 56(C) of the Ohio Rules of Civil Procedure provides that summary judgment is proper only if the trial court determines that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the non-moving party, that reasonable minds can come to but one conclusion and that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. Under the Rule and the controlling case law of this state, the moving party must support the motion with affirmative evidence in order to meet its burden of proving that no genuine issue of material fact exists for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115, 510 N.E.2d 1108.
We review the order granting summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; McManamon v. H R Mason Contrs. (Sept. 13, 2001), Cuyahoga App. No. 79014, unreported, 2001 Ohio App. LEXIS 4068. Summary judgment should not be granted where the facts are subject to reasonable dispute. The improper grant of summary judgment precludes a jury's consideration of a case and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion. Shaw v. Central Oil Asphalt Corp. (1981), 5 Ohio App.3d 42,44, 449 N.E.2d 3.
The threshold inquiry in the case at bar is whether a contract was actually formed between the parties. Problems relating to the actual formation of a binding contract involve questions related to offer, acceptance, or consideration. Also, and particularly pertinent here, is the well-settled proposition that the formation of a contract requires a meeting of the minds as to the subject matter of the contract. See, Cuyahoga Cty. Hospitals v. Price (1989), 64 Ohio App.3d 410,581 N.E.2d 1125; Lucas v. Costantini (1983), 13 Ohio App.3d 367,469 N.E.2d 927. To prove the existence of a contract, a plaintiff must show that both parties consented to the terms of the contract, that there was a meeting of the minds of both parties and that the terms of the contract are definite and certain. Nilavar v. Osborn (2000),137 Ohio App.3d 469, 738 N.E.2d 1271, citing McSweeney v. Jackson (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303. An express contract connotes an exchange of promises in which the parties have communicated the terms to which they agree to be bound. Nilavar, supra. And when the terms of a contract are not sufficiently definite, the contract is unenforceable. Isquick v. Classic Autoworks, Inc. (1993),89 Ohio App.3d 767, 627 N.E.2d 624. Generally, silence in response to an offer will not constitute an acceptance of an offer, especially if the relationship between the parties justifies an expectation of a reply. Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co., (1978),54 Ohio St.2d 147, 375 N.E.2d 410. There can be no contract if the parties do not agree on the essential terms of their agreement. Nilavar, supra.
In the case at bar, there was no meeting of the minds on the one essential term of the purported contract, that is, whether the Building could be sold. Almost from the very beginning of the parties' conversations relating to the purchase/sale of the Building, appellant knew that Yulish was the controlling partner and the majority owner of the building. By letter, dated May 12, 1999, Kay told appellant that [i]n order to present a clear title, he [Yulish] will have to settle the matter with his partner, which he will do if and when he accepts an offer from your Buyer. In its letter of May 10, 1999, appellant specifically asked for written confirmation * * * establishing that authority exists to sell the building * * *. To this request, Yulish never responded. From the correspondence in the record before us, we find that appellant knew that Yulish had withdrawn from the Partnership, that he was the majority owner of the Building and that the arbitration, which would settle matters between the partners, was pending. The record in the case at bar is bereft of any evidence that Yulish or any other appellee ever confirmed that the Building, by the time of the arbitration, was still for sale. Nor is there any indication that the arbitration between Yulish and Twohig concluded while the parties were discussing the sale of the Building. Nor is there evidence indicating Yulish ever accepted any offer by appellant, let alone accepted the Letter of Intent. It is undisputed that only Twohig signed the Letter, even though it expressly lists both Yulish and Twohig as Seller.[2] No one has presented any argument, let alone any evidence, that Twohig, when he signed the Letter, was acting as the Partnership's designee.
There is no evidence in the record before us that the two partners settled the dispute between them and agreed that the Partnership would sell the Building. Without proof that the Building could be sold between May and July 1999, we cannot say that the parties ever entered into an enforceable contract. Therefore, even when we construe the evidence most strongly in favor of appellant, we find that there was never a meeting of the minds on the one truly essential term, that is, whether the Building could be sold while Twohig and Yulish were arbitrating their respective and pro rata ownership interests in the Partnership and its assets. Because the parties did not reach a meeting of the minds, no contract was ever formed relating to the sale of the Building.
This conclusion is further supported by the undisputed fact that other material additional terms were also never agreed upon. The ACKNOWLEDGMENTS provision of the Letter, drafted by appellant, stated as follows:
 Both parties acknowledge and agree that this Letter of Intent is not a legally binding instrument and that material additional terms must be negotiated before a legally binding agreement is reached. This proposal is specifically conditioned upon the preparation, negotiation and execution of a Purchase and Sale Agreement in a form mutually acceptable to Seller and Buyer.
It is undisputed that the parties did not sign any Purchase and Sale Agreement. There is also no indication that the parties even met to negotiate the other material additional terms which would have had to be included in any final agreement between appellant and the Partnership. The record before us simply does not demonstrate compliance with the fundamental rule of law that a meeting of the minds is normally manifested by an offer and acceptance. Nilavar, at 484. The signing of an agreement generally demonstrates the existence of a meeting of the minds. Cuyahoga Cty. Hospitals, supra.
Given the foregoing analysis, we reject appellant's additional claim that the Letter, if not a binding contract, is, at least, an agreement to agree. As stated by the Ohio Supreme Court in Normandy Place Associates v. Beyer (1982), 2 Ohio St.3d 102, 443 N.E.2d 161,
 It is not the law that an agreement to make an agreement is per se unenforceable. The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.
In Normandy, the parties mutually engaged in actions indicating their intention to be bound. In the case at bar, however, there is no such mutuality of conduct. Appellant urges that we find its unilateral act of depositing escrow monies, along with its drafting of proposed purchase agreements to which appellees made some revisions, dispositive of the parties' intentions to be bound. We reject this argument because the record is devoid of any proof that the Building was actually for sale. Without this proof, these activities cannot reasonably indicate the parties' mutual intentions to be bound.
Accordingly, appellant's claim that a genuine issue of material fact remains on the issue of a binding contract is without merit. We similarly reject appellant's additional claim that appellees breached the duty to negotiate towards a purchase agreement for the Hilliard Building in good faith. Appellants have failed to provide, nor do we find, any supporting legal authority for such a duty when there is no evidence of a binding contract.
Appellant's first assignment of error is overruled.
 Assignment of Error No. 2: Whether the Trial Court Erred In Granting Appellees' Motions For Summary Judgment on Appellant's Fraudulent Inducement Claim Where The Evidence Creates A Genuine Issue of Material Fact As To Whether The Fourth Letter Of Intent Expressly Waived Reliance On Representations Made By The Appellees During Negotiations.
Appellant argues that the trial court erred in granting appellees' motion and in thereby disposing of its claim of fraudulent inducement. According to appellant, in submitting the Letter it relied upon three representations made by appellees: (1) that the Building was for sale, (2) that the pending arbitration would not interfere with the sale, and (3) that the YTA Law firm on the third floor of the Building would relocate. The trial court determined that summary judgment was proper, however, because appellant could not have relied upon any statements made by the appellees during negotiations.
In order to prove an actionable claim for fraud, a plaintiff must prove: (a) a representation * * * of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation * * *, and (f) a resulting injury proximately caused by the reliance. Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464,700 N.E.2d 859; Mehlman v. Burns (May 25, 2000), Cuyahoga App. No. 76281, unreported, 2000 Ohio App. LEXIS 2256. Failure to establish any one of the elements precludes recovery. Mehlman, supra, at *6. See, Burr v. Stark Cty. Bd. Of Commrs. (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
In the case at bar, appellant initially claims that appellees misrepresented that the Building was for sale and that the Partnership arbitration would not interfere with the sale. As a matter of law, these claimed misrepresentations relate to facts absolutely material to the transaction. The evidence, however, does not support appellant's position. In its First Amended Complaint, appellant states, generally, that [a]ll of the defendants, individually and/or through their agents, made representations that the Building was for sale and that the arbitration would not stop the sale. Appellant's own briefs and affidavits in opposition to appellees' motions for summary judgment mirror the very general accusations of fraud set forth in the First Amended Complaint. In the record before us it is clear that appellant presents only generalized comments; it has failed to produce any specific evidence relating to a prima facie case for fraud.
Under Rule 56 of the Ohio Rules of Civil Procedure, appellant, as the non-moving party, cannot withstand summary judgment unless it sets forth specific facts and evidence showing that there is a genuine issue for trial. Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,677 N.E.2d 308. Not only does appellant fail to specify, with particularity, the specific speaker(s) of the purported misrepresentations, it also fails to identify dates upon which said statements were made and where they were made. The mere generality of appellant's charges of fraud/misrepresentation is fatal to its claim here that there are genuine issues of material fact. Moreover, one cannot ignore the uncontroverted fact that, in response to appellees' motions for summary judgment, appellant produced nothing to challenge the evidence of its own knowledge about the Building and the arbitration. For example, by letter dated May 10, 1999, appellant asked for written confirmation that authority exists to sell the building * * *. That request implies that appellant knew that the pending arbitration between the partners was an issue. The Letter, which appellant claims forms the contract, was signed by appellant on May 28, 1999; no written response was ever received.
Earlier, in its letter of May 12, 1999, Kay very succinctly told appellant that Yulish, as the majority owner of the Building, could not present a clear title until the matter was settled with his partner. Then, on May 20, 1999, eight days before the Letter was signed, Kay advised appellant in writing that a new letter of intent was welcome and that after his clients received it they should all sit down and try to work out details so that we may agree on a formal purchase agreement. There is no evidence that any such meeting or conversations took place. Rather, appellant, unilaterally, drafted the Letter, which is no more than a proposal.
In all, we find that appellant cannot satisfy the elements of proving that the claimed representations were untrue on the date they were allegedly made, or that they were made with the intention of having appellant rely upon them. Contrary to appellant's position, it is not enough that it did rely; it must be shown that the person responsible for the misrepresentation meant to induce reliance at the time the statement was made. Burr, supra.
Finally, appellant produced no evidence that it justifiably relied upon the purported statements. To the contrary, the evidence is clear that well before appellant wrote the Letter, appellant knew that Yulish had withdrawn from the Partnership and thus knew there was a serious question as to Twohig's ability to bind what might have been a dissolved partnership. Appellant had been told that clear title was dependent upon Yulish and Twohig resolving their differences and splitting the Partnership assets between them. The Building was a significant Partnership asset subject to the arbitration. Appellant produced no evidence that it ever inquired into the facts of the arbitration or whether Twohig's signature alone, without Yulish's, on the Letter, was legally binding. In all, under Civ.R. 56, there are no genuine issues of material fact relating to appellant's claim of fraud. Reasonable minds could only conclude that summary judgment in favor of appellees was correct. The judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] The law firm was not a party to the Letter of Intent, nor did it possess any ownership interests in the Building.
[2] The Letter, in full, specifies the SELLER as Stanley Yulish and Mr. Twohig or their designee.