OPINION
{¶ 1} Appellant, Judith Bayus, individually as a Canfield Township resident and taxpayer and in her capacity as a Canfield Township Trustee, filed suit against several Mahoning County officials. These officials include: the Mahoning County Planning Commission; Joseph Warino, the Mahoning County Sanitary Engineer; Richard Marsico, the Mahoning County Road and Bridge Engineer; Gary Kubic, the former Mahoning County Administrator; and the former board of Mahoning County Commissioners, Edward Reese, David Ludt, and Vicki Sherlock (hereinafter collectively referred to as "Mahoning County" or "the county"). Appellant initially sought a writ of mandamus compelling the county to construct a sanitary sewer line at its expense along Gibson Road in Canfield Township. In the alternative, Appellant asked for damages from the county for breach of contract based on an alleged oral agreement made by Warino to provide sewer services along Gibson Road. Appellant's arguments on appeal do not once address her requested writ of mandamus. Instead, she focuses on the alleged contractual agreement. Thus, we will not address the trial court's denial of her mandamus based on her waiver of this issue and abandonment of this claim.
 {¶ 2} Appellant alleges a contract existed between the county and the township trustees. According to Bayus, the township trustees agreed to take possession of Gibson Road and to be responsible for its repair and reconstruction once the county fulfilled an alleged promise to install a sanitary sewer line under the road. The county was to secure an EPA loan to finance this project. However, the county sought but did not obtain this loan and the sewer was never installed. *Page 2 
Thereafter, in another court proceeding, the trustees were ordered to repair the road for the safety of the citizens and emergency response vehicles. The road was subsequently repaired by the township for safety reasons without the installation of the sanitary sewer line.
 {¶ 3} Appellant originally filed claims against other named parties, however, they were previously dismissed and are not parties to the instant appeal. Appellant also asserted a claim against the remaining Canfield Township Trustees and its clerk for misappropriation and misallocation arising from alleged illegal expenditures for the Gibson Road repairs in violation of R.C. § 5705.41. It is not clear from the trial court's record what became of this claim, but it is also not part of the instant appeal.
 {¶ 4} In response to Appellant's complaint, the county filed a counterclaim seeking attorney's fees and costs pursuant to R.C. §2323.51 based on Appellant's frivolous litigation.
 {¶ 5} Following discovery, the trial court granted Appellees summary judgment as a matter of law. The trial court concluded that all matters regarding Mahoning County were resolved. In so doing, it impliedly overruled the county's counterclaim. It further found that there was no just cause for delay. (Sept. 7, 2005, Amended Judgment Entry.)
 {¶ 6} Appellant timely appealed to this Court and she raises two assignments of error on appeal. She argues that summary judgment was inappropriate since genuine issues of material fact exist. She also claims that the trial court erred in *Page 3 
failing to recuse itself from presiding over this case. For the following reasons, however, Appellant's assignments of error lack merit and are overruled.
 {¶ 7} All of the material facts here are undisputed by the parties. In December of 1998, Warino and the Canfield Township Trustees began discussing the possibility that the county would install water and sewer lines along Gibson Road if the township agreed to improve the road thereafter. Everyone involved agreed that it made sense for the water and sewer lines to be installed prior to any road improvements. Appellant and the other trustees were well aware of Warino's plans to obtain a loan to finance the improvements.
 {¶ 8} Based on the discussions with Warino, the trustees agreed to take over Gibson Road from the county. Jurisdiction of the road was transferred to the township in December of 1998. At the time of these discussions, a developer was seeking approval to begin construction of a residential development off of Gibson Road. It appears that this proposed development prompted these discussions. At least some of the discussion was directed toward avoiding annexation of the road and/or the development into the City of Canfield.
 {¶ 9} Warino presented his estimate for the cost of the sanitary sewer along with a graph setting forth how the work was to progress at a March, 2000, Mahoning County Planning Commission meeting. Commission approval was necessary before work on the development could commence. The Commission approved the proposed residential development conditioned, among other things, upon the township's issuance of a bond ensuring the improvement of Gibson Road once the *Page 4 
sanitary sewer and water lines were completed. (Appellant's memorandum contra Appellees' motion for summary judgment, Exh. 11.) According to Appellant, at some point in these discussions the trustees unanimously voted to repair and reconstruct Gibson Road as long as the Mahoning County Sanitary Engineer was paying for the sanitary sewer. She claims the combined actions of the county and the township trustees in these sets of discussions and meetings constituted an enforceable contract, and that the county subsequently breached this agreement when it failed to install the sewer lines as promised.
 {¶ 10} Appellant's first assignment of error alleges,
 {¶ 11} "The Trial Court Erred And Abused Its Discretion In Sustaining Appellee Mahoning County's Motion For Summary Judgment And In Holding That There Does Not Exist Any Issue As To Material Fact."
 {¶ 12} Appellate courts review the decision to grant summary judgment de novo and employ the same standard as trial courts. Sharonville v. Am.Emps. Ins. Co., 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 5; Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129, 572 N.E.2d 198.
 {¶ 13} Summary judgment should only be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Summary judgment is not proper unless reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Zivish v. Mentor Soccer Club, Inc.
(1998), 82 Ohio St.3d 367, 369-70, 696 N.E.2d 201. In addition, a *Page 5 
court should construe all evidence and decide any doubt in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360,604 N.E.2d 138.
 {¶ 14} Appellant presents one issue for review under this assignment of error:
 {¶ 15} "Where a county turns over jurisdiction of a county road to atownship and the county orally agrees to construct a sanitary sewer as acondition or agreement by the township to construct the road inaccordance with agreed plans and specifications requiring the sanitarysewer to be placed in the base of the roadway a failure on the part ofthe county to construct the sewer within reasonable time limits set bythe county prior to the construction of the roadway by the townshiprepresents a breach of oral, implied or quasi-contract invoking theprinciples of promissory estoppel and detrimental reliance."
 {¶ 16} While Appellant's assignment is somewhat confusing, it appears that Appellant first alleges there was an express oral contract created by the county with Canfield Township to install sewer lines along Gibson Road. She alleges that the township relied on the county's representation that they would install those lines before the township assumed responsibility for Gibson Road. In the alternative, Appellant alleges that an implied contract was formed; that a quasi-contract based on equity is warranted; or that that the doctrines of promissory or equitable estoppel apply in this case.
 {¶ 17} It appears logical to first address Appellant's claims against the county based on promissory estoppel or detrimental reliance. Appellant alleges that the township relied on the county's promise to install a sanitary sewer to its detriment. *Page 6 
However, the Ohio Supreme Court has recently held in Hortman v.Miamisburg, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, at ¶ 16, that the doctrines of equitable and promissory estoppel do not apply to a political subdivision when it is engaged in a governmental function.
 {¶ 18} The subject of the instant matter, the installation of a sanitary sewer, involves a governmental function on the part of the county. Salem v. Harding (1929), 121 Ohio St. 412, 169 N.E. 457 (holding that the construction of sewers by a city is the exercise of a governmental function.) Nadeau v. City of Fairborn, 2nd Dist. No. 2004-CA-4, 2004-Ohio-5779 (holding that generally the design of a sewer system is a governmental function.) In Dehlendorf Co. v. JeffersonTwp., 10th Dist. No. 02AP-334, 2003-Ohio-1641, the court of appeals found that the sewer and water district was engaged in a governmental function by providing sewer and water services to a housing project. Accordingly, Dehlendorf held that the developer's detrimental reliance on the district's promise to provide services was not actionable on a promissory estoppel theory.
 {¶ 19} Based on this law, Appellant's theory of liability pursuant to promissory estoppel lack merit in this case, since the county was engaged in an exercise of its governmental functions at the time of the alleged promises. Hortman, supra.
 {¶ 20} In her amended complaint, Appellant alleged the creation of both express and implied-in-fact contracts arising from the county sanitary engineer's representations. To the contrary, Appellees argued that no contract existed since Appellant implied facts from the parties' continuing conversations and she individually *Page 7 
formulated the alleged "contract" in her mind. Appellees further claimed that Appellant conveniently adopted certain statements as promises by the county while ignoring other statements. Accordingly, Appellees claimed that there was no meeting of the minds and there were no clear and definite contract terms. It appears from the record that Appellees are correct.
 {¶ 21} The construction or interpretation of a contract is a matter of law to be resolved by the court. Dehlendorf Co., supra, at ¶ 18, citing Lovewell v. Physicians Ins. Co. of Ohio (1997),79 Ohio St.3d 143, 144, 679 N.E.2d 1119. There are three kinds of contracts: express, implied in fact, and implied in law. Stepp v. Freeman (1997),119 Ohio App.3d 68, 73, 694 N.E.2d 510. Contracts implied in law are not true contracts, but are quasi-contracts imposed by courts to prevent unjust enrichment. Legros v. Tarr (1989), 44 Ohio St.3d 1, 6, 540 N.E.2d 257, citing Hummel v. Hummel (1938), 133 Ohio St. 520, 525, 14 N.E.2d 923.
 {¶ 22} The existence of an express or an implied-in-fact contract requires proof of all of the elements of a contract. Stepp, at 74,694 N.E.2d 510, citing Lucas v. Costantini (1983), 13 Ohio App.3d 367, 368,469 N.E.2d 927. The terms of an express contract are actually articulated in the form of an offer and acceptance. Further, for an individual to be bound to a contract, that party must consent to certain and definite terms. Episcopal Retirement Homes, Inc. v. Ohio Dept. ofIndus. Relations (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. There must be a meeting of the minds, an offer, acceptance, and consideration to prove the existence of a contract. Noroski v. Fallet (1982),2 Ohio St.3d 77, 442 N.E.2d 1302; Ford v. Tandy *Page 8 Transp., Inc. (1993), 86 Ohio App.3d 364, 620 N.E.2d 996. "As a part of that meeting of the minds, there must be a definite offer on one side and an acceptance on the other." Garrison v. Daytonian Hotel (1995),105 Ohio App.3d 322, 325, 663 N.E.2d 1316 citing, Noroski, supra, at 79.
 {¶ 23} In order to establish a contract implied in fact, a plaintiff must prove that the circumstances surrounding the parties' transaction make it reasonably certain they intended to enter into an agreement.Lucas, supra, at 369. The party claiming that an implied-in-fact contract exists must prove that the parties reached a meeting of the minds as to the terms of the transaction. Campanella v. Commerce Exch.Bank (2000), 139 Ohio App.3d 796, 808, 745 N.E.2d 1087, citingLucas at 368.
 {¶ 24} Implied-in-law contracts are also referred to as quasi-contracts. In order to recover under a theory of quasi-contract, a plaintiff must demonstrate:
 {¶ 25} "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." Hambleton v. BarryCorp. (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298, quotingHummel v. Hummel (1938), 133 Ohio St. 520, 525, 14 N.E.2d 923.
 {¶ 26} Appellees argued in their motion for summary judgment that no manner of contract was created here as no clear and unambiguous contractual terms can be construed from the words or deeds of the parties in this case. Further, all the documents and evidence show that any alleged promise by Warino to have the county install a sanitary sewer on Gibson Road was contingent upon the county's *Page 9 
receipt of funding in the form of an EPA loan. Finally, Appellees argued that there was simply no meeting of the minds in this case, thus preventing the formation of an enforceable contract.
 {¶ 27} Appellees primarily presented the affidavit of Joseph Warino in support of its motion for summary judgment. Warino stated in his affidavit that the county never committed to install a sewer along Gibson Road at its sole cost. Instead, the county intended to help Canfield Township with the installation of sanitary sewers along Gibson Road, "if the County could obtain an EPA loan and possibly other funding." (Warino Affidavit, ¶ 15.) Attached to Warino's affidavit was a letter he wrote to Appellant Judith Bayus in which he stated in part,
 {¶ 28} "This letter is in response to your correspondence regarding a clarification of the proposed expenditures for water and sewer line extensions along Gibson Road in the Township. The intent of this office was to assist the Township by providing the services within the right of way of Gibson road [sic] making water and sewer accessible to the residents and property owners along said route. It was never the intent of this office to subsidize the construction of on [sic] lot improvements. Furthermore, the county intended to apply for a [sic] EPA loan to finance the construction of the water and sewer. The repayment of the loan shall be made by an imposed per lot assessment estimated at approximately $2,500 per lot." (December 3, 1998, Letter.)
 {¶ 29} Appellant acknowledged receiving this letter in her deposition. She also read the letter into the Canfield Township Meeting Minutes on December 14, 1998. *Page 10 
 {¶ 30} Appellant's own deposition supports Warino's affidavit in pertinent part. As a Canfield Township Trustee, she asked the Mahoning County Sanitary Engineer, Joseph Warino, whether it was feasible for the township to tap into the county's sanitary sewer. This occurred in 1998. She and the other trustees were looking at supplying service to the Gibson Road area. Appellant received Warino's letter dated December 3, 1998, following several months of conversations with him concerning the placement of water and sewer lines at Gibson Road. (Bayus Depo., pp. 19, 23, 25.) Appellant testified that Warino indicated that his office could provide the water and sewer lines if the township committed to improving the road. She agreed that Warino's "promise" was to, "provide the sanitary sewer and at that time, the water along Gibson Road, just as it says in this letter." (Bayus Depo., p. 26.) Again, Warino's letter clearly stated that the county intended to apply for EPA funding for this project. (December 3, 1998, Letter.) Thus, Appellant was, or should have been, well aware that Warino's alleged promise hinged on securing outside funding.
 {¶ 31} Appellant explained that the "promise" made by Warino on which she based this suit surrounds Warino's public and private discussion relative to having the county provide a sanitary sewer line to Gibson Road. However, from her own deposition it is clear that she was fully aware Warino conditioned the sewer line on his intention to have the county obtain an EPA loan and possibly obtain other grant money in order to finance the project. (Bayus Depo., pp. 35, 54-55.) Appellant explained that the trustees' intent in securing sewer lines to Gibson Road was to prevent the annexation of the property from the township into the City of Canfield and *Page 11 
to make improvements to the road. (Bayus Depo., p. 71.) Per the parties' discussions, the township was to improve and reconstruct the road after the county's installation of the water and sewer lines.
 {¶ 32} Part of the December 14, 1998, township meeting minutes were read into the record at Appellant's deposition. They stated in part:
 {¶ 33} "Mrs. Bayus asked Mr. Warino how soon he can get started after we get the road under our jurisdiction? Mr. Warino reiterated, once he gets a commitment from Trustees his office will submit paperwork — it takes about two months to get [loan] approval — from that point hire consultant and begin engineering. If all goes according to plan, water and sewer in place, the road will be ready for rehabilitation next year." (Bayus Depo., Exhibit 11; December 14, 1998, Canfield Township Trustees Meeting Minutes.)
 {¶ 34} Thereafter, at the March 27, 2000, Canfield Township Trustees Meeting, Appellant was asked about her vote concerning a resolution to bring Gibson Road under the township's authority. She indicated that her decision to vote for a resolution, "was based on Sanitary Engineer's application for EPA loan which would take the sanitary sewer and water line out of the hands of the Township — no financial responsibility to Township — and Township would apply for Issue II funds," to pay for the roadway. (Bayus Depo., Exh. 12, March 27, 2000, Canfield Township Meeting Minutes.)
 {¶ 35} Notwithstanding the foregoing, when Appellant was asked directly in her deposition, she contradicted her own testimony and said that Warino did not *Page 12 
make it clear to the township that the sewer installation was contingent on funding. (Bayus Depo., p. 135.) When asked on what date Warino made his promise to install the sanitary sewer, she responded that it was, "[a] continuous discussion of what he was going to do for the Township over several dates." (Bayus Depo., pp. 140-141.)
 {¶ 36} The subdivision developer ended up extending water lines to the development off of Gibson Road. Thus, water lines are not an issue here. The county never commenced the installation of the sanitary sewer lines under Gibson Road. As earlier stated, however, the township trustees have made repairs to Gibson Road as ordered by the Mahoning County Court of Common Pleas in another case.
 {¶ 37} As additional evidence of the county's breach of its alleged contract, Appellant points to Warino's statements at the January 7, 2003, District Six Public Works Integrating Committee meeting. Warino was discussing the placement of public sanitary sewers in the unsewered areas of Canfield Township. Warino indicated that the county was considering several options, including the installation of a sewer line along Gibson Road or even placing the lines, "through the back lots of Meander." (January 7, 2003, District Six Public Works Integrating Committee Meeting Minutes, p. 146.) Appellant claims the fact that Warino mentioned placing the sanitary sewer lines somewhere other than Gibson Road constitutes a breach of their alleged contract.
 {¶ 38} Appellant also claims that while the township performed pursuant to the "contract" and assumed repairs and maintenance of the road, the county has yet to *Page 13 
provide the promised sanitary sewer. However, it is uncontroverted that neither Appellant nor the township would ever be responsible for the maintenance or construction of sanitary sewers in Canfield Township. Should sewer lines be installed under Gibson Road at any future date, the township will not be responsible for repairs to the road caused by this installation. Further, Appellant testified that neither she nor the township could be held responsible for improvements to septic systems on private property in the township. (Bayus Depo., pp. 157-158.)
 {¶ 39} Based on the foregoing, we are unable to find that a contract existed in this case. Although Appellant was advised that the county needed to secure an EPA loan in order to proceed with the project, she apparently personally believed, at least some of the time, that the county should have installed the sewer regardless of funding. Yet Warino's letter dated December 3, 1998, confirmed that the county would provide water and sewer lines upon obtaining an EPA loan. Warino's affidavit confirms this information. There is no evidence to the contrary. Appellant's own deposition confirms that the "promise" on which she is allegedly basing her claims was conditional at best. While she also contradicts herself and tries to also claim that it was absolute, not conditional, she has offered no real evidence on which to base a contractual claim. Even if she, at times, believed the "promise" or "offer" to install sewer lines was unconditional, no county representative had such an impression and the evidence supports the county's claims. Accordingly, it is impossible to find that there was a meeting of the minds. Without the threshold necessary to establish a contract or implied in fact contract exists, Appellant's claims in this regard must fail. *Page 14 
 {¶ 40} The evidence reflects that any alleged agreement between the parties was contingent upon the county's securing the necessary funding. There was no evidence establishing a contractual duty by the county to install a sewer line along Gibson Road absent the requisite funding. Appellant cannot claim any justifiable reliance on a conditional or contingent "promise," even if we could construe the county agents' actions and words to be in the nature of a promise. Hence, no implied in law contract or quasi contract exists. Accordingly, there are no genuine issues of material fact and the county was appropriately granted summary judgment. Appellant's first assignment of error lacks merit and is overruled.
 {¶ 41} Appellant's second assigned error claims,
 {¶ 42} "The Trial Court Abused Its Discretion And Erred In Failing To Rule Upon And Sustain Appellant's Motion For The Trial Court To Recuse Itself And Request A Visiting Judge To Preside In The Case."
 {¶ 43} Appellant's issue for review under this assignment of error states,
 {¶ 44} "Where the record shows that six defendants in the case areoffice holders in Mahoning County, three of whom are Mahoning CountyCommissioners, the Court had the obligation and duty to hold a hearingand rule upon a pending recusal motion before ruling on a motion forsummary judgment."
 {¶ 45} On August 3, 2005, Appellant filed a motion with the trial court judge asking her to recuse herself from hearing this matter. Appellant claimed that since the Mahoning County Common Pleas Court judges submit their annual budgets to one of the defendants, the Mahoning County Board of Commissioners, a conflict of *Page 15 
interest existed. In support of her argument, Appellant directed the trial court's attention to Canon 3 of the Code of Judicial Conduct entitled, A judge shall perform the duties of judicial officeimpartially and diligently. She then argued that all of the Mahoning County Court of Common Pleas Judges should recuse themselves from presiding over any case in which the Commissioners are a party.
 {¶ 46} The trial court judge never explicitly ruled on Appellant's motion for recusal. However, it is well settled that motions not expressly ruled on are deemed impliedly overruled. Takacs v.Baldwin (1995), 106 Ohio App.3d 196, 209, 665 N.E.2d 736; Kline v.Morgan (Jan. 3, 2001), 4th Dist. Nos. 00CA2702 00CA2712. Further, a trial court's final decision impliedly denies any outstanding motions.Seff v. Davis, 10th Dist. No. 03AP-159, 2003-Ohio-7029, at ¶ 16, citingHayes v. Smith (1900), 62 Ohio St. 161, 189, 56 N.E. 879. Accordingly, the trial court denied Appellant's motion.
 {¶ 47} It should also be noted that R.C. § 2701.03(A) provides for the procedure to request disqualification of a court of common pleas judge from presiding over a case. It states,
 {¶ 48} "If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of *Page 16 
disqualification with the clerk of the supreme court in accordance with division (B) of this section."
 {¶ 49} The requisite affidavit should include the allegations of prejudice or bias along with facts in support. It should also contain a certificate indicating that a copy of the affidavit was served on the judge against whom the affidavit is filed and on all other parties to the case. It must also contain the date of the next scheduled hearing in the case. R.C. § 2701.03(B)(1)-(4). Upon the Supreme Court's acceptance of the affidavit, the common pleas court judge is precluded from further action in the case until a supreme court justice rules on the affidavit. R.C. § 2701.03(D).
 {¶ 50} A review of the record in this matter does not reflect that Appellant ever filed an affidavit of disqualification with the Supreme Court. Further, Appellant filed her initial complaint on June 17, 2003. Her case was initially handled by a judge. It was then assigned to a magistrate for a period of time until the final trial court judge took over this case in September of 2004. Appellant did not request the second judge to recuse herself until August 3, 2005. Thus, almost one year had passed without this alleged bias being raised against the second judge, and more than two years had passed without this alleged bias being raised against all of the Mahoning County Court of Common Pleas judges.
 {¶ 51} In In re Disqualification of Mitrovich (2000),91 Ohio St.3d 1206, 1207, 741 N.E.2d 135, the Ohio Supreme Court held,
 {¶ 52} "`[i]n the absence of extraordinary circumstances, an affidavit of disqualification should not be used to disqualify a judge after lengthy proceedings *Page 17 
have taken place in a case. * * * A party may be said to have waived the right to obtain a judge's disqualification when the alleged basis therefor has been known to the party for some time, but the objection is raised in an untimely fashion, well after the judge has participated in the proceedings.'" (Citations omitted.)
 {¶ 53} Given the time that lapsed in this case, the proceedings that occurred during this time, and Appellant's failure to even file the appropriate affidavit of disqualification, this alleged error lacks merit and is overruled.
 {¶ 54} In conclusion, Appellee's motion for summary judgment was appropriately granted. There were no genuine issues of material fact since the evidence established that the parties did not have an enforceable contractual agreement of any kind. As such, the trial court's decision is hereby affirmed in full.
Donofrio, J., concurs.
 DeGenaro, P.J., concurs. *Page 1