OPINION
{¶ 1} Plaintiffs-appellants, Frank J. Torbeck and The Everest Group (collectively "appellants"), appeal the decision of the Clermont County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Anthony Iannelli and Gutter Topper, Ltd. ("Gutter Topper") (collectively "appellees"). We affirm the common pleas court's decision.
 {¶ 2} On August 10, 2004, Torbeck, a commercial real estate broker, made a cold call to Gutter Topper, inquiring as to whether the company was in the market for new *Page 2 
property. Torbeck spoke with Mic Iannelli, Gutter Topper's plant manager, who stated that Gutter Topper may be interested in acquiring a new building. Torbeck mentioned a 42,800 square foot office/industrial building located at 4111 Founders Boulevard, Batavia (the "property"). Per Mic Iannelli's request, Torbeck sent him some information on the property and two other potential sites.
 {¶ 3} Approximately five or six weeks later, Gutter Topper asked Torbeck to schedule a showing of the property. Because Torbeck knew the property was going to be sold at a sheriff's sale, he located the attorney handling the case, who put Torbeck in contact with US Bank, the company that held the first mortgage on the property. US Bank provided Torbeck with the amount of its first mortgage and with the name of the auctioneer, Frank McCullough. Torbeck then arranged the first showing of the property through McCullough.
 {¶ 4} On September 29, 2004, Anthony Iannelli, owner of Gutter Topper, and Slate Kirk, CEO of Gutter Topper, attended the showing. There, Torbeck provided them with a site plan. Torbeck also gave Anthony Iannelli his opinion of the property's value and other information he had obtained through his previous discussion with Kurt Albertson, the property's previous owner.
 {¶ 5} On September 30, 2004, Gutter Topper asked Torbeck to submit to US Bank a written offer of $900,000. Torbeck prepared a deposit receipt and real estate purchase contract. The offer to purchase provided that US Bank would pay Torbeck's commission. Before Torbeck delivered the contract to US Bank, however, he was informed that US Bank had sold its mortgage note to an investor and that the investor intended to sell the property in a sheriffs sale. Torbeck informed Gutter Topper of the situation. As a result, the purchase offer was never extended to US Bank, and the inquiry ended.
 {¶ 6} Approximately six months later, on March 16, 2005, Kirk contacted Torbeck for an update on the property. Torbeck informed him that the property was scheduled for a *Page 3 
sheriff's sale on April 5, 2005. On March 31, 2005, Kirk and Torbeck again discussed the upcoming sheriff's sale. At that time, Torbeck extended an offer to help Gutter Topper purchase the property in return for a six percent commission. Kirk told Torbeck that he would discuss the commission with Anthony Iannelli and would let him know. Torbeck faxed to Kirk the sheriff's sale information, which listed the appraised value and opening bid. Torbeck also mailed to Kirk a copy of the business park covenants and owner's association costs related to the property.
 {¶ 7} On April 5, Torbeck attended the sheriff's sale, but no one from Gutter Topper attended. The property was not sold. On April 11, 2005, Torbeck left a message for Kirk to call him.
 {¶ 8} On April 22, Kirk called Torbeck to get an update on the property and asked Torbeck how to obtain the sheriff's sale information online. Torbeck volunteered to send Kirk the new sheriff's sale information when it became available. Kirk again called Torbeck on May 11, 2005, to inquire about the property. At that time, Torbeck informed Kirk that the second sheriff's sale would take place on June 14, 2005, and that the appraised price and starting bid had both been reduced. At that time, Torbeck also volunteered his opinion as to the property's value. Torbeck then faxed the sheriff's sale information to Kirk.
 {¶ 9} On June 14, 2005, Kirk and Anthony Iannelli attended the sheriff's sale, where Iannelli purchased the property for $1.5 million. Torbeck also attended the sale, although Gutter Topper neither requested his presence at the sale nor his assistance in purchasing the property. After the sale, Torbeck asked Kirk about his commission, and Kirk instructed him to call later in the afternoon. Although Torbeck called several times, he never received a return call. On June 20, 2005, Anthony Iannelli called Torbeck and informed him that because Gutter Topper purchased the property at a sheriff's sale, it owed no commission to Torbeck. *Page 4 
 {¶ 10} On November 5, 2005, appellants filed a complaint for breach of contract and quantum meruit against appellees. The trial court granted summary judgment in favor of appellees. Appellants timely appealed, raising one assignment of error.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY THE DEFENDANTS-APPELLEES, ANTHONY IANNELLI."
 {¶ 13} "We review a trial court's decision granting summary judgment de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is appropriate "when looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party." Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus; Civ.R. 56. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107.
 {¶ 14} Within their sole assignment of error, Appellants present three distinct issues for review. For ease of discussion, we will consider appellants' second issue first, in which they argue that "there is a genuine issue of whether or not an implied contract arose when Gutter Topper continued to use Torbeck's services after he informed Gutter Topper how much he would charge them for such services."
 {¶ 15} A contract implied in fact is a true contract. To recover on this type of contract, the proponent must establish the essential elements of a contract: an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms *Page 5 
of the contract. Turner v. Langenbrunner, Warren App. No. CA2003-10-099, 2004-Ohio-2814, at ¶ 13. In a contract implied in fact, the meeting of the minds is inferred by the surrounding circumstances, which demonstrate that the parties intended to be bound. Rice v. WheelingDollar Savings and Trust (1951), 155 Ohio St. 391, 397; Lucas v.Constantini (1983), 13 Ohio App.3d 367, 368-369. In order to show there existed a meeting of the minds, there "must be a definite offer on one side and an acceptance on the other." Garrison v. Daytonian Hotel (1995)105 Ohio App.3d 322, 325.
 {¶ 16} In support of his argument that a contract implied in fact existed between Torbeck and appellees, Torbeck asserts that appellees' assent to Torbeck's six percent commission request is inferable based on Kirk's requests for information from Torbeck after Torbeck requested that Gutter Topper protect his six percent commission on March 31, 2005. We agree with the trial court's finding, however, that the surrounding circumstances do not demonstrate a meeting of the minds.
 {¶ 17} No one from Gutter Topper ever agreed to pay Torbeck's commission. Even the September 2004 purchase offer provided that the property's seller would pay the commission. In addition, appellees only contacted Torbeck two times after the September 2004 purchase offer expired, and no one from Gutter Topper requested Torbeck's representation or advice. In fact, Kirk's purpose for making the two calls to Torbeck was to obtain updates on the property. Although Torbeck mentioned the commission to Kirk during the March 31, 2005 telephone conversation, Torbeck did not explain what services he would be providing in return for the commission. Further, Kirk only said to him that he would discuss the matter with Anthony Iannelli. Torbeck also did not secure appellees' agreement to the commission before he voluntarily gave his opinion as to the property's value and provided appellees with the sheriff's sale information. Additionally, Torbeck did not aid appellees in any way when they purchased the property at the June 14, 2005 sheriff's sale. *Page 6 
Even after construing the facts in favor of appellants, we cannot find sufficient evidence to show that a genuine issue of material fact exists as to whether an implied-in-fact contract existed between the parties.
 {¶ 18} In their first issue presented for review, appellants argue that there is a genuine issue as to whether Gutter Topper was unjustly enriched at the expense of Torbeck.
 {¶ 19} When a party makes a claim for unjust enrichment, it is asking the court to find the existence of a contract implied in law, or quasi-contract, which is "nothing more than a legal fiction, an equitable legal vehicle for obtaining a just result." Lucas,13 Ohio App.3d at 369 (citation omitted). The existence of a quasi-contract does not depend on the intent of the parties, as one may become an obligor without ever consenting to the creation of an obligation. Id. "Unjust enrichment occurs when one party confers some benefit upon another without receiving just compensation for the reasonable value of the services rendered." Quadek v. Foister, Warren App. No. CA2004-09-112,2005-Ohio-4191, at ¶ 22 (citations omitted). In order to find that appellants are entitled to recover under this theory, the evidence must clearly and convincingly show (1) a benefit conferred by Torbeck upon appellees, (2) knowledge by appellees of such benefit, and (3) retention of the benefit by appellees under circumstances where it would be unjust to do so without payment. Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183.
 {¶ 20} Torbeck argues that in addition to identifying the property to appellees, he also provided them with all of the essential information about the property and sheriffs sale, which enabled appellees to successfully bid on and acquire the property at a bargain price. We agree with the trial court's finding, however, that appellants failed to raise an issue of material fact demonstrating that appellees were unjustly enriched.
 {¶ 21} Appellants correctly assert that Torbeck brought the property to appellees' attention, scheduled and attended a showing of the property with Anthony Iannelli and Kirk. *Page 7 
Torbeck also contacted the bank to obtain the property's loan information and gave his opinion as to the value of the property. He then drafted a contract to purchase the property for appellees, in which he included that his commission would be paid by the seller. After Torbeck chose not to tender the offer and it expired, he provided nothing further to enable appellees to acquire the property. He only provided appellees with updates on the property, including information regarding the sheriff's sale he found on the county auditor's webpage. Torbeck did not work as appellees' agent, did not negotiate the price with the seller, and did not aid appellees in bidding on the property at the sheriff's sale. Appellees never requested his presence or assistance at the sheriff's sale. Appellants have failed to raise genuine issues of fact that show they are entitled to recovery under the theory of unjust enrichment. Therefore, we find appellants' argument not well-taken.
 {¶ 22} In their third issue presented for review, appellants argue that "there is a genuine issue of whether or not Torbeck was the procuring cause of Gutter Topper acquiring the property."
 {¶ 23} Before a broker is entitled to a commission, he must show that he was the procuring cause of the sale. Upper Valley Realty, Inc. v.Hanson, Miami App. No. 2005-CA-5, 2006-Ohio-314, at ¶ 26, citingBauman v. Worley (1957), 166 Ohio St. 471, 473. A procuring cause is a cause that originates "a series of events, which, without break in continuity, result in accomplishment of the prime objective of the employment of the broker, producing a ready, willing and able buyer on the owner's terms." Id. A broker is not entitled to recover a commission for the sale of real estate merely because he incurred expenses or spent time in an attempt to sell the property. Id.
 {¶ 24} Appellants correctly point out that typically, the broker is a procuring cause when he produces a bona fide purchaser for a seller's property. In this case, the situation involves a sheriff's sale. Therefore, appellants argue that Torbeck, the broker, was the *Page 8 
procuring cause because (1) Torbeck produced the property for Gutter Topper, who was a bona fide purchaser, ready, willing, and able to purchase the property, and (2) Torbeck identified the property to appellees and guided them through the sheriff's sale.
 {¶ 25} As already discussed, however, Torbeck provided nothing to enable appellees to acquire the property once the September 2004 offer to purchase expired. In addition, there was a break in continuity between that September 2004 offer and appellees' eventual purchase of the property. Torbeck had no contact with appellees between September 2004 and March 2005. In March 2005, he voluntarily offered his opinion of the property's value and faxed over information found on the auditor's website.
 {¶ 26} Furthermore, Anthony Iannelli purchased the property without Torbeck's aid. Even Torbeck himself admitted in his deposition that he provided appellees information voluntarily and that he did not view himself as appellees' hired broker. Torbeck was unaware that appellees were not attending the first sheriff's sale. He was also unaware of appellees' purchase strategy for the second sheriff's sale. Given not only the length of time from the expiration of the September 2004 offer to purchase, but also the fact that Torbeck was not involved in the final transaction, appellants have failed to raise an issue of material fact showing that Torbeck was the procuring cause of the sale.
 {¶ 27} Accordingly, because appellants have failed to show a genuine issue of material fact that would preclude summary judgment, their sole assignment of error is overruled.
 {¶ 28} Judgment affirmed.
 BRESSLER, P.J., and POWELL, J., concur. *Page 1