Marshall, C. J.
 

 By his petition, plaintiff has grounded his action upon a claim of negligence on the part of the city, and has assigned eight different grounds of negligence. The error for which the Court of Appeals reversed relates to the act of the health officer of the city, in conjunction with an employe of the service department of the city, in plugging the outlet of the Brooks sewer and causing the water to recede until it acquired sufficient pressure to force its way through the intervening soil into the gravity line. There was evidence tending to show that, while the work was done by the health officer and an employe of the service department, the fact of the sewer being plugged was known to the service director within a week from that time.
 

 
 *415
 
 The city filed an answer alleging that the Brooks sewer was constructed as a storm sewer only, and that it had been constructed as a private enterprise, and that many years thereafter, to wit, in 1913 and in 1916, the city had constructed two sanitary sewers in East Green street to supplant the same. These latter sewers were combination storm and sanitary sewers. The answer further disclaimed liability, because of the health officer exercising police functions and acting pursuant to orders of the board of health of the city of Salem. The answer further alleged that the gravity water line had been constructed and installed in accordance with law, with proper and sufficient material, and in accordance with engineering principles, and in a workmanlike manner. Evidence was adduced in support of all those allegations. At the close of the introduction of evidence by both parties, plaintiff in writing requested the court to instruct the jury before argument, and the court in fact instructed the jury before argument, and again in the course of the charge after argument, that, when cities voluntarily accept the provisions of the statutes of the state, whereby they construct and operate a waterworks system for the purpose of furnishing, water to their citizens, they thereby engage in a proprietary function, and are therefore charged with the exercise of ordinary care, that is to say, such care as ordinarily prudent persons generally exercise under the same or similar circumstances; and further charged that, if in maintaining and operating a waterworks system the city failed to exercise that degree of care, and the jury further found that, as a direct and proximate result of such failure, the daughters of plaintiff became
 
 *416
 
 sick, whereby plaintiff incurred expense and suffered loss of wages and service which he would not otherwise have incurred or lost, the plaintiff should recover. Counsel for the city at the same time requested the court to charge, and the court in fact charged, both before and after argument, that, even though the jury should find that the gravity line was contaminated by the plugging of the Brooks sewer, thereby forcing pollution into said gravity line, the verdict must nevertheless be for the defendant if the plugging was done by and under the instructions of the board of health or health officers of the city of Salem, and the court further charged, at the request of the city, that no action can be maintained or recovery had against the city of Salem based upon any acts of negligence either of commission or omission of its board of health or health officers.
 

 The court further charged that the city of Salem is not a guarantor of the purity of its domestic water supply.
 

 The judgment of the common pleas court was reversed by the Court of Appeals on the sole ground that the trial court charged the jury that the city would not be liable for the acts of its health officer, or other person acting under the instructions of the board of health, and that no action can be maintained or recovery had against the city based upon any acts of negligence of its board of health or health officers.
 

 The evidence is quite conclusive that the pollution of the water supply was caused by plugging the Brooks sewer. It does not, however, follow that the liability of the city is fixed by that fact. Counsel for the city does not complain at this time of the
 
 *417
 
 court having charged that the city would be responsible for the negligence of its servants or agents in causing the contamination, if such contamination proximately resulted in the damage complained of. The city does, however, stand squarely upon the principles governing the law of negligence, and that it can only be held responsible in any event if its agents and servants did or omitted to do that which ordinarily prudent persons would or would not do under similar circumstances. The plaintiff requested this instruction, the defendant now concedes that it was sound, and this court concurs in that view. The construction and operation of waterworks is a ministerial act, and proprietary in nature, and the city was properly held to the duty to exercise ordinary care.
 

 The plaintiff has argued that water is a necessary commodity, and that the city becomes a guarantor of the purity and wholesomeness of the water supply to its citizens for drinking purposes. It is sufficient to say that none of the authorities cited by plaintiff supports that view, and the trial court did not err in its instruction to the jury upon that question. If municipalities of this state, or of any state, were held to respond in damages for all sickness and death caused by water-borne diseases, municipal burdens would be increased to the point where the municipalities would have to go out of existence. The only difficult question submitted for our determination is whether or not the Court of Appeals erred in reversing the judgment of the common pleas upon the ground stated, viz., in charging, in substance, that the city is not responsible for the acts of its health officer, or board of health, or other
 
 *418
 
 persons acting under the instructions of the board of health. The verdict of the jury was in favor of the city, and it may be that the jury were of the opinion that the agents and servants of the city had acted as ordinarily prudent persons would have acted under similar circumstances. On the other hand, if the jury were of a different opinion, that instruction would have prevented any verdict except one favorable to the city.
 

 Counsel for the plaintiff have cited certain decisions in other jurisdictions which declare, that, even where the city is acting in a governmental capacity, it must respond in damages for the creation of a nuisance. In the cases cited, the nuisance was actively created by the city, and the results were apparent, and there was no issue of the city’s notice and knowledge. In the case at bar, the consequences of plugging the Brooks sewer were not apparent. In the cases cited, as in the instant case, the municipalities had actively created the situation, and were not merely passively permitting it to exist. In the cases cited, the municipalities must reasonably have anticipated that injurious results would flow from their acts. In the case at bar, the jury must determine whether injurious results might reasonably have been anticipated. The instant case has much in common with the case of
 
 City of Portsmouth
 
 v.
 
 Mitchell Mfg. Co.,
 
 113 Ohio St., 250, 148 N. E., 846, 847, 43 A. L. R., 961. The opinion in that case declared:
 

 ‘ ‘ The weight of authority holds that the construction and institution of a sewer system is a governmental matter, and that there is no liability for mere failure to construct sewers. However, the
 
 *419
 
 weight of authority is equally decisive in holding that the operation and upkeep of sewers is not a governmental function, but is a ministerial or proprietary function of the city.”
 

 This latter proposition was' carried into the syllabus.
 

 If the city is liable for a nuisance caused by the acts of its agents and servants performed in the operation and upkeep of sewers, whereby its functions are interfered with, it is difficult to see upon what principle it would not also be liable for its acts in destroying its functions altogether. In the
 
 Portsmouth case,
 
 the city was held responsible for damages caused by the obstruction of a sewer due to the action of the elements, and in which the agents and servants of the city had only remotely participated, and where the damage was done to property. In the instant case it is sought to hold the city responsible for acts of the agents and servants of the city where the elements have not intervened, and where the obstruction was purposely brought about, and where the damage has resulted in injury to human life. The
 
 Portsmouth case
 
 disclaimed any intention to conflict with the case of
 
 Aldrich
 
 v.
 
 City of Youngstown,
 
 106 Ohio St., 342, 140 N. E., 164, 27 A. L. R., 1497, and the court at this time disclaims any such intention. Still adhering to the proposition that the construction and institution of a sewer system is a governmental function, we are nevertheless of the opinion that the city is liable for any obstruction thereto which is known to the city, if the city through its proper officers knew or in the exercise of ordinary care should have known that the obstruction would have an injurious effect upon
 
 *420
 
 life or property. The city being responsible for its negligence upon the foregoing principles and authorities, it may not escape that responsibility on the sole ground that it was acting in the exercise of its police power. The Court of Appeals did not err in reversing the judgment.
 

 The trial court correctly charged the jury that the city of Salem is responsible for negligence, but the court might well have more concretely defined the issue of negligence. The question of negligence is not a mere abstract question whether the epidemic proximately resulted from the fact that the sewer was plugged by city officials. The negligence or want of it on the part of the city is not to be judged solely by the fact, if it be the fact, that the water supply was contaminated by the backwater from the abandoned sewer. If the city acting by its agents has been negligent, it is only on the theory that reasonably prudent men, knowing that there was a water main in Green street, might reasonably have anticipated that there might be imperfect joints in the water line, or that the sewer pipe might be porous, and that the high pressure of the backwater in the sewer would probably force the contamination through the joints or porous sewer pipe. The issue for the jury’s determination is whether the illness was probably caused by an impure water supply, and, if so, whether that impurity was probably caused by plugging the Brooks sewer, and, if both these issues were resolved in plaintiff’s favor, whether reasonably prudent persons acting on behalf of the city would have anticipated the sequence of events which resulted in plaintiff’s injury and damage.
 

 
 *421
 
 The judgment of the Court of Appeals will he affirmed.
 

 Judgment affirmed.
 

 Kinkade, Jones, Matthias, Day and Allen, JJ., concur.