Gibson, J.,
concurring in the judgment. As no issue was raised in the Court of Common Pleas, in the Court of Appeals, or in this court as to the sufficiency of the plaintiff’s allegations of negligence on the part of the defendant, the only issue to be determined is whether the petition fails to state a cause of action because a municipal corporation is immune from liability for its common-law negligence in such a case. Ohio, as most states, regards a municipal corporation as having a rather curious dual character, being at one and the same time a corporate entity and a subdivision of the state. Consequently, attempted distinctions between “governmental” and “proprietary” functions of municipalities are made in determining their liability for negligence. While the rule that a municipalty is liable when acting in its proprietary capacity but- is immune from liability when acting in its governmental capacity may be stated simply enough, the applicaton of the “simple rule” has caused much difficulty, and in fact the law in this area is a tangle of disagreement and confusion. Thus, the basic question is whether the purported distinction should be continued.
*392 In the early reported American cases it apparently was assumed, without argument and as a matter of basic justice, that municipal corporations were subject to actions for torts. Although the English case of Russell v. Men of Devon (1798), 2 Term Rep., 667, 100 Eng. Rep., 359, extended the immunity of the state to a municipality (county), there was no good authority for a distinction between “public” and “private” corporations for use of the early American courts. Barnett writing on “The Foundations of the Distinction Between Public and Private Functions in Respect to the Common-Law Tort Liability of Municipal Corporations” in 16 Oregon Law Review (1937), 250, indicated that the earliest reported American case recognizing the tort liability of a municipal corporation was Hooe v. Alexandria, 1 Cr. C. C., 90, 12 Fed. Cas. No. 6666 (U. S. C. C., 1802). In that case no distinction was made between the tort liability of public and private corporations, and the municipality was held liable simply as a “corporation.”
The early cases in Ohio apparently took the same approach as to tort liability of municipal corporations. In Goodloe v. City of Cincinnati (1831), 4 Ohio, 500, involving the city’s negligent repair of an old street which caused damage to the abutting property, this court said:
“When the corporation of a town grade the streets, the object is the benefit of the whole town. If an individual is injured, it is right he should have redress, against all upon whose account the injury was perpetrated. There is no justice in sending him to seek redress from an irresponsible agent. There is no propriety in compelling the injured party to look for compensation to the mere agent, who acted in good faith, according to the directions of his employers. * * *”
Also see Smith v. City of Cincinnati (1831), 4 Ohio, 514. Later in Rhodes v. City of Cleveland (1840), 10 Ohio, 160, it was held expressly that municipal corporations, like individuals, are liable for injuries done although the tortious acts were not beyond their lawful powers. Lane, C. J., in the Rhodes case said, among other things, that ‘ ‘ since so much of the business of the world is transacted through their [corporate] agency, it becomes necessary that courts should meet their expanding powers by an extension of the limits of their liability.” See, also, McCombs v. Town Council of Akron (1846), 15 Ohio, 475, *393 where this court held that a municipal corporation, like an individual, is liable for injuries resulting to plaintiff’s property from the acts of employees of the municipality.
In 1842 the historic case of Bailey v. City of New York, 3 Hill, 531, 38 Am. Dec., 669, bifurcated municipal corporations for the purpose of imposing tort liability by distinguishing between “public” and “private” or, as more commonly stated today, governmental and proprietary functions. It seems entirely likely that the New York decision is the result of the court’s failure to understand the reasoning of Chief Justice Marshall in Bank of United States v. Planters Bank of Georgia (1824), 9 Wheat., 904, 6 L. Ed., 244, in holding the state liable as any other stockholder of a bank, together with a misunderstanding of the distinction drawn in the Dartmouth College case (Trustees of Dartmouth College v. Woodward [1819], 4 Wheat., 518, 4 L. Ed., 629) between public and private corporations for purposes of legislative control. See 16 Oregon Law Review, supra, 267.
Twelve years later this court in City of Dayton v. Pease (1854), 4 Ohio St., 80, after discussing Bailey v. City of New York and other New York cases, began to draw a distinction between governmental and proprietary functions as far as tort liability of a municipality is concerned. From that date until 1919, it would appear that the courts of this state attempted, albeit unsuccessfully on occasion, to distinguish between public and private functions of municipal corporations in determining their liability for negligence.
In 1919 six judges of this court in Fowler, Admx., v. City of Cleveland, 100 Ohio St., 158, after noting the growing dissatisfaction with the rule which exempts a municipality from liability for all acts “which have loosely been classed as governmental” and the revolutionary changes in the functions of modern cities, concluded that the application of the ordinary rules for determining liability of other defendants in similar cases sufficiently safeguarded the public corporation. The syllabus expressing the majority opinion reads as follows:
“1. Section 16, Article I of the Constitution, guarantees to every person for injury done him in his lands, goods, person or reputation remedy by due course of law.
“2. It is not the policy of government that the state or any *394 of its subdivisions shall, in the absence of special provision, indemnify persons for loss or damage either from lack of proper laws or administrative provisions; nor from inadequate enforcement of laws or the inefficient operation of such provisions.
‘ ‘ 3. But where a wrongful act which has caused injury was done by the servants or agents of a municipality in the performance of a purely ministerial act which was the proximate cause of the injury without fault on the part of the injured person respondeat superior applies and the municipality is liable.
“4. Frederick, Admx., v. City of Columbus, 58 Ohio St., 538, overruled.”
The return of Ohio law to the condition prior to Bailey v. New York did not last long. In 1922, after a change in the membership of the court, Jones, J., who had dissented in the Fowler case, led all but one of his associates safely back into the morass of conflict and confusion surrounding the attempted distinction between governmental and proprietary functions of municipalities in Aldrich v. City of Youngstown, 106 Ohio St., 342.
Proof that the classification of particular functions of municipalities has been difficult and frequently leads to absurd and unjust consequences could fill many pages. In the interest of time and space, we refer those who would see the “bramble bush” created by this classification system, which is both faulty and unsuited to modern city life, to Seasongood, Municipal Corporations: Objections to the Governmental or Proprietary Test, 22 Virginia Law Review (1936), 910.
Within the past four years, Zimmerman, J., speaking for this court in Eversole v. City of Columbus (1959), 169 Ohio St., 205, confessed that “it is impossible to reconcile all the decisions of this court dealing with the subject of governmental and proprietary functions in relation to a municipality. For example, why should the management of public grounds and buildings (State, ex rel. White, v. City of Cleveland, 125 Ohio St., 230, 181 N. E., 24, 86 A. L. R., 1172) be classed as a proprietary function, whereas the construction and maintenance of a park and swimming pool (Selden v. City of Cuyahoga Falls, 132 Ohio St., 223, 6 N. E. [2d], 976) were conceded to be gov *395 ernmental functions? And why should the construction of sewers (Hutchinson v. City of Lakewood, 125 Ohio St., 100, 180 N. E., 643, and State, ex rel. Gordon, City Atty., v. Taylor, 149 Ohio St., 427, 435, 79 N. E. [2d], 127) be considered as a governmental function, whereas the maintenance and repair of sewers, after construction (City of Portsmouth v Mitchell Mfg. Co., 113 Ohio St., 250, 148 N. E., 846, 43 A. L. K., 961, City of Salem v. Harding, 121 Ohio St., 412, 169 N. E., 457, and Doud v. City of Cincinnati, 152 Ohio St., 132, 87 N. E. [2d], 243) is regarded as a proprietary function?”[1]
The difficulty this court has had in applying this faulty classification system is further demonstrated by considering the fact that in 1918 it was believed that collecting garbage was a proprietary function (City of Cleveland v. Russo, Admr., 98 Ohio St., 465, affirming, without written opinion, Russo, Admr., v. City o/ Cleveland [1917], 28 C. O. [N. S.], 25), but in 1957 it was believed to be governmental (Broughton v. City of Cleveland, 167 Ohio St., 29). In 1869 (Wheeler v. City of Cincinnati, 19 Ohio St., 19) and in 1898 (Frederick, Admx., v. City of Columbus, 58 Ohio St., 538) it was believed that the operation of a fire department was governmental, but in 1919 (Fowler, Admx., v. City of Cleveland, supra) it was thought not. In 1922 (Aldrich v. City of Youngstown, 106 Ohio St., 342), this court again changed its mind and concluded that the operation of a police department, being no different in principle from the operation of a fire department, was governmental, and overruled the Fowler case[2]
This court, in conformity with the courts of many states, has further confused the problem by holding that a municipal corporation is liable if it can be found to have created or maintained a nuisance, even though it be in the course of an otherwise governmental function. Gaines v. Village of Wyoming (1947), 147 Ohio St., 491.
To the extent that the immunity granted a municipality when it exercises its governmental function is an extension of the doctrine “The King can do no wrong,” such immunity is clearly wrong. Mr. Justice Miller in Langford v. United States *396 (1879), 101 U. S., 341, 343, 25 L. Ed., 1010, said respecting this doctrine: “We do not understand that either in reference to the government of the United States, or of the several states, or of any of their officers, the English maxim has an existence in this country.” See, also, Welch v. Tennessee Valley Authority (C. C. A. 6, 1939), 108 F. (2d), 95.
It has been suggested that any change in the immunity of municipalities from liability for negligence in the performance or nonperformance of their governmental functions must be made by the General Assembly because the immunity is fixed by the doctrine of stare decisis. Admittedly the General Assembly has the authority to change or abolish the rule of immunity created by this court for municipal corporations in regard to their so-called governmental functions, but that in no way precludes this court from changing its own rule. This court was not afraid to reject the doctrine of stare decisis in Avellone v. St. John’s Hospital (1956), 165 Ohio St., 467, when, upon looking at the facts as they exist in the 20th century, it held that notwithstanding stare decisis a corporation not for profit, which has as its purpose the maintenance and operation of a hospital, is, under the doctrine of respondeat superior, liable for the torts of its servants. See, also, Muskopf v. Corning Hospital District (1961), 55 Cal. (2d), 211, 359 P. (2d), 457, where the argument that any change in the rule of governmental immunity was the exclusive province of the legislature was rejected.
The suggestion that the immunity of municipal corporations from liability for negligence in the performance or nonperformance of their governmental functions must be changed, if at all, by the General Assembly ignores completely the fact that negligence as a separate basis of tort liability has been developed by the courts out of the common-law action on the case since about 1825. Prosser, Law of Torts (2d), 117. Thus, in the instant case of alleged negligence on the part of the city of Salem, the courts have developed not only the basic theory of liability but also the rule calling for a classification of ministerial functions of municipal corporations. In no other area of the law has legislation played such a small part. The immunity provided to municipalities for injuries arising out of *397 governmental functions, as we have seen, is entirely the handiwork of the courts. Green, Freedom of Litigation: Municipal Liability for Torts, 3'8 Illinois Law Beview (1944), 355. The courts having created the theory of liability and the confusing classifications of municipal functions should be willing to abolish the distinctions which so completely ignore the fundamental issue involved as to which party is better able to bear the cost.
To raise the question of whether the municipality or the injured individual is better able to bear the cost is to answer it. The municipality, which is able to spread the burden of the cost of an injury among its taxpaying residents, is in a much better position, in the vast majority of cases, than the injured individual, who must bear such loss from his own resources. Although the municipality, as an entity, may not profit from its activity, yet (it is devoutly to be hoped) the taxpaying public does, and in Ohio cities it is frequently a taxpaying public of many thousands which would bear the costs of losses occasioned by negligence in the performance or nonperformance of municipal activities.
There is no good reason why a municipal corporation should not be held liable for its negligent torts on the same basis as a private corporation. The municipal corporation is no more a legal concept than a private corporation. Both arise by operation of law, both necessarily act through agents, and both necessarily are going to have agents who at times are negligent in the performance of their duties. The ordinary rules of liability applicable to private corporations should give municipalities all the protection they require against unreasonable claims. The defenses available, e. g., contributory negligence and voluntary assumption of risk, are extensive and they are ably pleaded and consistently upheld by the courts. Moreover, under the doctrine of respondeat superior the liability of municipal corporations would be as limited as that of a private corporation by the requirement that the municipal employees act within the scope of their employment.
Within the past six years the supreme courts of four major states have assumed their responsibility by abolishing the doctrine of governmental immunity. In 1957, the Supreme Court of Florida in Hargrove v. Town of Cocoa Beach, 96 So. (2d), *398 130, 60 A. L. R. (2d), 1193, held that, although liability may not be imposed on a municipal corporation for actions taken in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions, when an individual suffers injury proximately caused by the negligence of a municipal employee acting within the scope of his employment, such individual may maintain an action against the municipality for redress of the wrong done. In 1959, the Supreme Court of Illinois in Molitor v. Kaneland Community Unit District No. 302, 18 Ill. (2d), 11, 163 N. E. (2d), 89, on its own authority, overthrew the doctrine of governmental immunity as it related to the negligence of a school district in its operation of a public school bus. In 1961, the Supreme Court of Michigan in Williams v. City of Detroit, 364 Mich., 231, 111 N. W. (2d), 1, by an equally divided court, held that a city was immune from liability for the death of a moving and storage company employee, who was killed in a fall down the elevator shaft in a city-owned building, used solely for governmental purposes, but overruled the doctrine of immunity for municipal corporations for future cases by a majority of the court.[3] In the same year, the Supreme Court of California in Muskopf v. Corning Hospital District, supra, rejected the doctrine of governmental immunity from tort liability as an anachronism, without rational basis, and as having existed only by the force of inertia.
After consideration of the many factors involved, I conclude that liability may not be imposed upon a municipal corporation for actions taken or not taken in the exercise of discretion in legislative or judicial, or quasi-legislative or quasi-judicial, functions; nor for lack of proper laws or administrative provisions; nor for inadequate enforcement of laws or the inefficient operation of such provisions. But, when a person, through no fault of his own, suffers injury proximately caused by the negligence of a municipal corporation in the performance or nonperformance of its ministerial functions, regardless of whether such functions were heretofore classified as governmental or proprietary, such person may maintain an action against the municipality for redress of the wrong done.
*399 I agree with the majority of this court that the demurrer to plaintiff’s petition should have been overruled but, in my opinion, the syllabus of this court should be:
1. A municipal corporation, under the doctrine of respondeat superior, is liable, unless immune by statute, for its negligence in the performance or nonperformance of ministerial functions, regardless of whether such functions were heretofore classed as governmental or proprietary.
2. A petition in an action for damages for bodily injuries alleged to have been proximately caused by the negligence of a municipal corporation in maintaining and operating a public swimming pool is not demurrable on the ground that the municipality is immune from liability for torts committed in the performance or nonperformance of its ministerial functions.
Matthias and O’Neill, JJ., concur in the foregoing concurring opinion.

 Footnote on Page 399.

 Footnote on Page 400.

 Footnote on Page 402.