[Cite as *Wanamaker v. Bucyrus*, 2012-Ohio-5232.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### CRAWFORD COUNTY

JOHN WANAMAKER, ET AL.,

    PLAINTIFFS-APPELLEES,

    v.                                                              CASE NO.  3-12-02

ANDERZACK-PITZEN
CONSTRUCTION, INC.

        DEFENDANT-APPELLEE,
        -AND-                                                    O P I N I O N

CITY OF BUCYRUS, OHIO,

    DEFENDANT-APPELLANT.

JOHN WANAMAKER, ET AL.,

    PLAINTIFFS-APPELLEES,

    v.                                                              CASE NO.  3-12-03

ANDERZACK-PITZEN
CONSTRUCTION, INC.

        DEFENDANT-APPELLANT,
        -AND-                                                    O P I N I O N

CITY OF BUCYRUS, OHIO,

    DEFENDANT-APPELLEE.

**Appeals from Crawford County Common Pleas Court
Trial Court No. 10-CV-0450**

**Judgment Reversed and Cause Remanded in Case No. 3-12-02
Judgment Affirmed in Case No. 3-12-03**

**Date of Decision: November 13, 2012**

**APPEARANCES:**

> *James F. Mathews and Gary A. Piper* **for Appellant, the City of Bucyrus**

> *J. Stephen Teetor and Scyld D. Anderson* **for Appellant, Anderson-Pitzen Construction, Inc.**

> *James H. Banks* **for Appellees, John and Linda Wannamaker**

**SHAW, P.J.**

**{¶1}** Defendants-appellants, the City of Bucyrus (the "City") and Anderzack-Pitzen Construction, Inc. ("APC"), appeal the April 17, 2012 judgments of the Crawford County Court of Common Pleas denying their motions for summary judgment.

**{¶2}** In 2009 and 2010, the City undertook a significant highway reconstruction and improvement project, known as the 2009 Downtown Street &

Storm Sewer Project, which involved replacing pavement, installing new curbs, repairing sidewalks, upgrading sewers, and improving traffic lighting. The City contracted with APC as the prime contractor for the project. The project affected a particular section of Sandusky Street in downtown Bucyrus where the business of the plaintiffs-appellees, John and Linda Wanamaker (the "Wanamakers"), is located.

{¶3} On June 9, 2010, the basement wall of the Wanamakers' building was damaged when a backhoe operated by an APC employee hit the wall while attempting to remove a concrete slab in the sidewalk. As a result, four blocks in the building's foundation were knocked out of alignment. After the incident, the Wanamakers noticed water leaking through the damaged portion of the wall, which destroyed items stored in the basement and created an intolerable "musty smell" that permeated through the building. The Wanamakers also discovered that their showroom glass window was damaged allegedly as a result of the constant jackhammering associated with the project.

{¶4} On September 24, 2010, the Wanamakers filed a complaint naming the City and APC as defendants. The complaint alleged that the City and APC improperly used heavy equipment during the project, which caused damage to their building. The complaint further alleged that the City was negligent in hiring and retaining APC to handle the project. The complaint also claimed that Linda

Wanamaker now suffers from chronic sinus problems and other health issues as a result of the smell caused by the seepage in the damaged wall. The Wanamakers specifically asserted in the complaint that the City and APC acted "knowingly, intentionally, willfully and wantonly and with reckless disregard of the rights of [the Wanamakers] and the safety of their property." (Complaint at ¶ 4). Consequently, the Wanamakers sought punitive as well as compensatory damages.

{¶5} The City filed an answer asserting several defenses, including that it is entitled to governmental immunity as a political subdivision under R.C. 2744.01 et seq. APC filed a separate answer asserting various defenses and specifying that it reserved the right to assert "all defenses for which discovery and/or investigation reveal a basis." (APC answer at ¶ 23).

{¶6} During the course of discovery, it was revealed that the Wanamakers' basement wall, which was part of an old coal chute, protruded into the public right of way underneath the sidewalk.

{¶7} On February 29, 2012, the City filed a motion for summary judgment asserting that the Wanamakers' claims are barred because it is entitled to governmental immunity, and that the Wanamakers' damages stem from the fact that their wall encroached on the public right of way. The City also claimed that they had contracted with APC and another independent party to complete the project and that the damage to the Wanamakers' building occurred while APC was

working in its contracted capacity. The City maintained that it did not direct or participate in the work resulting in the damage to the Wanamakers' building.

{¶8} The same day, APC also filed a motion for summary judgment asserting it is entitled to governmental immunity pursuant to R.C. 2744.01 et seq. APC argued that the City specifically instructed APC to remove the section of sidewalk abutting the Wanamakers' building, which caused the damage. APC also asserted that even though it was hired by the City to complete the project, the City never made APC aware that a portion of the Wanamakers' wall protruded into the public right of way underneath the sidewalk. Therefore, APC contended that insofar as the City is entitled to immunity, APC is also entitled to immunity because it was acting as an agent on behalf of the City and performing a governmental function at the time the damage to the Wanamakers' building occurred.

{¶9} On April 17, 2012, in two separate judgment entries, the trial court summarily overruled both the City's and APC's motions for summary judgment. Pursuant to R.C. 2744.02(C), both the City and APC filed notices of appeal, asserting the following assignments of error.[1]

---

[1] Section 2744.02(C) of the Revised Code states "an order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability * * * is a final order." Because the appeals arise from separate judgment entries issued by the trial court, there are separate appellate case numbers assigned to each case (case no. 3-12-02 refers to the City's appeal and case no. 3-12-03 refers to APC's appeal). This Court subsequently consolidated the cases for purposes of oral

Case Nos. 3-12-02, 3-12-03

*Appeal 3-12-02*

**THE CITY'S ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED WHEN IT OVERRULED THE APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND DENIED THE APPELLANT THE BENEFIT OF GOVERNMENTAL IMMUNITY, TO THE APPELLANT'S PREJUDICE.**

**THE CITY'S ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED WHEN IT OVERRULED THE APPELLANT'S MOTION FOR SUMMARY JUDGMENT ON THE ALTERNATIVE GROUNDS PRESENTED, TO THE APPELLANT'S PREJUDICE.**

**{¶10}** On appeal, the City argues that the trial court erred in overruling its motion for summary judgment. Specifically, the City claims that it is entitled to governmental immunity under R.C. 2744.01 et seq. and that this immunity bars all the Wanamakers' claims against it.

**{¶11}** Initially, we note that an appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley–Slowinski v. Superior Spinning & Stamping Co.*, 128 Ohio App.3d 360, 363 (1998). A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C)

argument. However, because the issues raised in both appeals stem from the same set of facts, we have elected to address the appeals in a single opinion.

-6-

are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *see Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus.

{¶12} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, syllabus (1988). The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

{¶13} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property.

> **First, R.C. 2744.02(A) sets forth the general rule of immunity, that political subdivisions are not liable in damages for the [loss to person or property,] personal injuries or death of a person. R.C. 2744.02(A)(1) provides:**
>
> **"For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function." * * ***
>
> **The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in former R.C. 2744.02(B). * * * Thus, once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply. * * ***
>
> **Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies."**

*Hortman v. City of Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶¶ 10-12, quoting *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998).

{¶14} The parties do not dispute that the City is a political subdivision within the meaning of the statute. However, the Wanamakers argue that the exception set forth in R.C. 2744.02(B)(2) precludes the City from raising immunity as a defense in this case. Specifically, this exception provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to

*proprietary functions* of the political subdivisions." R.C. 2744.02(B)(2) (emphasis added). The Wanamakers maintain that the City was performing a "proprietary function" when the damage to their building occurred implicating the exception to governmental immunity. The City for its part argues that the R.C. 2744.02(B)(2) exception does not apply because the City was engaged in a "governmental function" at the time the Wanamakers' building was damaged, and therefore it is entitled to invoke the governmental immunity stated in R.C. 2744.02(A)(1).

{¶15} The statute recognizes that political subdivisions act in two defined capacities—"governmental functions" and "proprietary functions." R.C. 2744.01(C)(1) defines a "governmental function" as a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

> **(a)   A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;**
>
> **(b)   A function that is for the common good of all citizens of the state;**
>
> **(c)   A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.**

Section 2744.01(C)(2) of the Revised Code specifies the following as examples of

a governmental function which are pertinent to our consideration.

> * * *

> **(e)   The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds;**

> * * *

> **(l)   The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system* * *.**

> **{¶16}** Section 2744.01(G)(1) of the Revised Code defines a "proprietary

function" as a function of a political subdivision that is specified in division (G)(2)

of this section or that satisfies both of the following:

> **(a)   The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;**

> **(b)   The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.**

Section 2744.01(G)(2) provides that a " 'proprietary function' includes, but is not

limited to, the following:"

> **(a)   The operation of a hospital by one or more political subdivisions;**

**(b) The design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery;**

**(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system;**

**(d) The maintenance, destruction, operation, and upkeep of a sewer system;**

**(e) The operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility.**

{¶17} In the instant case, the record reveals the following regarding the nature of the project at issue. Attached to its motion for summary judgment, the City submitted the affidavit of Sean Cassaro, an Engineer Technician with the City. Cassaro averred that the project involved replacing pavement, installing new curbs and sewer upgrades, repairing sidewalks, and improving traffic lighting. In addition, a Construction Daily Report submitted for the date the damage to the Wanamakers' building occurred, indicates that the sidewalk in front of the Wanamakers' building needed repaired because a two-inch-wide section of the existing sidewalk had pulled away at the joint leaving a 1/8 inch gap. APC removed the two inch strip of sidewalk so that new concrete could be poured. Thus, the record demonstrates that the Wanamakers' building was damaged during the performance of this specific sidewalk repair.

**{¶18}** In reviewing the statute, this particular project falls squarely into at least two of the enumerated examples of a governmental function in the statute—i.e., R.C. 2744.01(C)(2)(e)(defining a governmental function as the "regulation of the use of, and the maintenance and repair of * * * sidewalks") and R.C. 2744.01(C)(2)(l)(defining a governmental function as the "provision or nonprovision, planning or design, construction, or reconstruction of a public improvement"). Moreover, other appellate courts have recognized reconstruction and improvement projects similar to the one performed in the case sub judice constitute a governmental function. *See CAC Building Properties, L.L.C., v. City of Cleveland*, 8th Dist. No. 91991, 2009-Ohio-1786, ¶¶ 31-33; *Music Centers, Inc. v. Cuyahoga Falls*, 9th Dist. No. 21802, 2004-Ohio-3703, ¶ 13.

**{¶19}** Notably, the Wanamakers fail to cite any evidence in the record or any authority supporting their contention that the City was engaged in a proprietary function when their building was damaged.

**{¶20}** The Wanamakers also allege that the City was negligent in hiring and retaining APC as the prime contractor to complete the project. The Wanamakers further allege the City acted with reckless disregard when it hired APC and that it intentionally concealed the fact from the Wanamakers that their building allegedly encroached on the public right of way.

**{¶21}** Section 2744.03 of the Revised Code provides as follows:

**(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:**

**\* \* \***

**(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.**

{¶22} The record demonstrates that the Wanamakers failed to submit any evidence to the trial court to substantiate their claim that the City was negligent in exercising its discretion to hire APC to complete the project. Moreover, upon viewing the inferences to be drawn from the underlying facts set forth in Wanamakers' pleadings and deposition testimony in a light most favorable to them, there is simply no credible evidence in the record to support the Wanamakers' claim that the City's discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner or that it intentionally concealed any information from them.

{¶23} Accordingly, because none of the exceptions in R.C. 2744.02(B) apply and because there is no other basis to abrogate the City's governmental

immunity, we find there is no genuine issue of material fact that the City is entitled to immunity pursuant to R.C. 2744.02(A)(1). Therefore, we conclude the trial court erred when it overruled the City's motion for summary judgment on this basis. The City's first assignment of error is sustained.

**{¶24}** Next, the City argues in its second assignment of error that it is entitled to summary judgment on alternative grounds. However, due to our resolution of the City's first assignment of error, the second assignment of error is rendered moot and is therefore overruled.

### *Appeal 3-12-03*

### **APC'S ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT ANDERZACK-PITZEN CONSTRUCTION, INC.'S MOTION FOR SUMMARY JUDGMENT.**

**{¶25}** On appeal, APC argues that any governmental immunity granted to the City should also be extended to APC by virtue of its relationship with the City in completing the project. Specifically, APC contends that any status it may have had as an independent contractor was "supplanted" by the City's direct order to remove the sidewalk which resulted in the damage to the Wanamakers' building. Accordingly, APC argues it was acting as the City's "employee" at the time the damage occurred rather than as an independent contractor.

{¶26} Section 2744.01(B) of the Revised Code defines "Employee" as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision. 'Employee' does not include an independent contractor * * *." Generally, independent-contractor status is determined by the right to control. *Bostic v. Connor*, 37 Ohio St.3d 144, paragraph one of the syllabus (1988). The key issue is whether the City retained control of, or the right to control, the mode and manner of doing the work contracted for—i.e., the sidewalk repair.

{¶27} The following facts were submitted for the trial court's review regarding the degree of control exercised by the City over APC in executing the specific sidewalk repair. As part of discovery, APC filed the affidavit of Roger Jones, the APC operating engineer who operated the backhoe causing the damage to the Wanamakers' building. Jones averred that APC did not order the removal of the specific piece of sidewalk, which resulted in the damage, but that APC was simply following the orders of another individual who was either working for the State of Ohio or the City. Rogers also claimed no one informed him that the Wanamakers' wall protruded underneath the sidewalk.

{¶28} In addition, APC filed the affidavit of David Bost, the APC foreman who worked on the project. Bost averred that the original construction plan was to

only remove the sidewalk located more than five feet from any buildings. Bost claims this plan was modified when the City's third-party engineer, Stan Carlysle, told him that APC had to remove the sidewalk adjoining the Wanamakers' building. Bost claimed he told Carlysle that he did not want to remove the additional sidewalk for several reasons, one of which was that this task was outside the "scope of work." Bost averred that APC eventually removed the sidewalk at issue at Carlysle's insistence, but claims that no one made APC aware that the Wanamakers' wall protruded underneath the sidewalk.

{¶29} Based on this evidence, APC argues that the City's order to remove the sidewalk adjoining the Wanamakers' building "made the relationship between the City and [APC] to be one of master-and-servant rather than owner-and-independent contractor." (APC brief at 5). Accordingly, APC maintains that it was acting as "an agent under the control" of the City at the time the damage to the Wanamakers' building occurred and therefore it is also entitled to immunity under R.C. 2744.02(A)(1).

{¶30} Throughout the proceedings before the trial court, the City consistently denied exercising any significant degree of control over APC with respect to the specific sidewalk repair. As previously noted, the City submitted an affidavit of its Engineering Technician who stated the following:

**[The City of] Bucyrus contracted with [APC] as the prime or general contractor for the reconstruction project.**

**\* \* \***

**[The City of] Bucyrus separately contracted for inspection services with Gleespen Engineering & Surveying, Inc. ("Gleespen").**

**\* \* \***

**Attached hereto, marked as Exhibit "C," is an authentic copy of the Construction Daily Report prepared by Gleespen for June 9, 2010, taken from the project file records. This report memorializes the events which occurred that date while the contractors, APC and Gleespen, were working on the area of the project in front of the building owned by John & Linda Wanamaker.**

**\* \* \***

**The City of Bucyrus did not direct and did not participate in the work described in the June 9, 2010, Construction Daily Report [which resulted in the damage to the Wanamakers' building].**

(Cassaro Affidavit at ¶¶ 5-9).

{¶31} As demonstrated by the record, the degree of control the City exerted over APC on the day in question remains disputed by the parties. In particular, the parties dispute the role of Gleespen, whose employee apparently ordered the removal of the sidewalk, as either an agent for the City or as a third-party independent contractor. Thus, genuine issues of material fact exist regarding the relationship between the City and APC which are determinative to whether

APC is also entitled to immunity under R.C. 2744.02(A)(1). Therefore, this matter is not properly determined by summary judgment. Accordingly, we conclude that the trial court did not err when it denied APC's motion for summary judgment on this basis. APC's assignment of error is overruled.

{¶32} For all these reasons, the judgment of the Crawford County Court of Common Pleas in appeal number 3-12-02 is reversed and the cause remanded for further proceedings consistent with this opinion and the judgment of the Crawford County Court of Common Pleas in appeal number 3-12-02 is affirmed.

*Judgment in 3-12-02 Reversed*
*and Cause Remanded*

*Judgment in 3-12-03 Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**