[Cite as *Goebel v. Minster*, 2020-Ohio-5467.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# AUGLAIZE COUNTY

EDWARD GOEBEL, ET AL.,

    PLAINTIFFS-APPELLEES,               CASE NO.  2-20-14

    v.

VILLAGE OF MINSTER,

    DEFENDANT-APPELLANT,
    -and-                            O P I N I O N

HELMS & SONS EXCAVATING, INC.

    DEFENDANT-APPELLEE.

---

**Appeal from Auglaize County Common Pleas Court**
**Trial Court No. 2020 CV 0052**

**Judgment Affirmed**

**Date of Decision:   November 30, 2020**

---

APPEARANCES:

    *Jane M. Lynch and Jared A. Wagner* for Appellant

    *Sean R. Alto and Jeffrey T. Kenney* for Appellee

Case No. 2-20-14

**SHAW, P.J.**

{¶1} Defendant-appellant, Village of Minster ("Minster"), brings this appeal from the June 3, 2020 judgment of the Auglaize County Common Pleas Court denying, in part, its Civ.R. 12(B)(6) motion to dismiss the complaint of Edward and Lisa Goebel, et al (collectively, "appellees"). On appeal, Minster argues that it was entitled to sovereign immunity and that the trial court erred by finding that the appellees had pled facts sufficient that, if believed, would defeat a claim of sovereign immunity.

*Background*

{¶2} In early 2019, Minster began soliciting bids from area contractors for a project known as "Northeast Sanitary Sewer/Second Street Sewer Project."[1] (Doc. No. 1). "The project was essentially the reconstruction of Second Street and the sewer systems in that area." (*Id.*) Helms & Sons Excavating, Inc. ("Helms") submitted the lowest bid, and the bids were discussed at a Minster Council meeting on April 2, 2019. At that meeting, the Minster Council expressed concerns about Helms "and the ability to do the work called for in the project based upon negative feedback from other municipalities." (*Id.*) Nevertheless, Minster entered into a contract with Helms for the reconstruction of Second Street. Minster also hired

---

[1] As this appeal is the review of the denial of a Civ.R. 12(B)(6) motion to dismiss, we cite the factual allegations contained in the complaint because, for the purposes of this appeal only, we must accept them as true.

-2-

"CTL Engineering" to oversee the progress of the project and the quality of work performed by Helms.

{¶3} Pursuant to the contract, the work to be performed by Helms "included the installation of storm sewer modifications, water main, sanitary sewer, service laterals, sidewalks, curb and gutter, and installation of a sanitary sewer down a portion of Garfield and Second Streets." (*Id.*) Helms began its work on or about April 22, 2019. During the initial construction phase, Helms discovered what was described as an abandoned sewer line on Second Street and Helms reported the discovery to Minster. Thereafter, Minster specifically instructed Helms to remove the abandoned sewer line.

{¶4} During the removal—or "destruction" as appellees alleged—of the sewer system, Helms created a "trench box" on Second Street to stop water from the canal from interfering with work. Appellees alleged that Helms negligently constructed the trench box.

{¶5} On May 17, 2019, it rained, causing water in the canal to rise. "The rising water and sediment in the canal entered the pipe that was blocked by the trench box." (*Id.*) According to the complaint,

> **This negligent construction caused water to flood the trench box and the lift station, which in turn caused the lift station pumps to stop working. Once the pumps at the lift station stopped working, sewage from the lift station flooded into the [appellees'] homes causing substantial damage to the [appellees'] real and personal**

> **property, as well as the loss of use of their homes for a substantial period of time.**

(*Id.*)

{¶6} Appellees are a group of individual landowners in Minster who were impacted by the sewage. On April 15, 2020, appellees filed a complaint against Minster and Helms alleging negligence in the destruction of a sewer system pursuant to R.C. 2744.01(G)(2)(d), and breach of contract to a third-party beneficiary. The appellees sought damages in an amount in excess of $25,000.

{¶7} Helms filed an answer on May 1, 2020, denying negligence, and asserting that appellees were not third-party beneficiaries and had no privity of contract in this matter. Further, Helms' answer stated that Helms

> **located a server line, which was not on the plans and, pursuant to the Contract, properly reported it to [Minster] and otherwise accepted instructions from [Minster] and Choice One Engineering. Such instructions included an instruction to remove said server line because it was dead and abandoned and no longer in use, which turned out to be incorrect.**

(Doc. No. 12).[2]

{¶8} On May 8, 2020, Minster filed a Civ.R. 12(B)(6) motion to dismiss the complaint filed by appellees arguing that the factual allegations from the complaint demonstrated that the alleged negligence that caused damages occurred within the context of a construction project involving the repair and maintenance of a roadway

---

[2] As this is outside of the complaint, we do not rely on it for anything in this appeal; rather, we use it to provide context to the action.

and sewer system, both of which were governmental rather than proprietary functions. Thus Minster claimed that it was entitled to sovereign immunity pursuant to R.C. 2744.02, which precluded recovery from Minster in this matter. Further, Minster argued that even if there was an exception to immunity that existed in this case, Minster claimed that under R.C. 2744.03(A)(5), immunity should be reinstated because there were no allegations that the "trench box" was constructed or installed with malice, bad faith, wantonness, or recklessly. (Doc. No. 14). Finally, Minster argued that appellees had no grounds to attempt to enforce the contract between Minster and Helms in the breach of contract claim.

{¶9} On May 26, 2020, appellees filed a memorandum contra to Minster's motion to dismiss arguing that pursuant to their allegations and supporting Ohio case authority, Minster was engaged in a proprietary function for which an exception to immunity applied, namely the destruction of a sewer system "which is explicitly identified as a proprietary function under R.C. § 2744.02(G)(2)(d)." [sic] (Doc. No. 20). Appellees also asserted that Minster was not entitled to reinstatement of immunity pursuant to R.C. 2744.03(A)(5) merely by "baldly" claiming that the actions in this matter did not amount to, at least, recklessness. Finally, appellees argued that they had adequately stated a claim for breach of contract as a third-party beneficiary based on the plain language of the contract at issue.

{¶10} On June 2, 2020, Minster filed a reply memorandum reiterating previous points and arguing, *inter alia*, that the "removal" of a "single abandoned sewer line during the course of [the] project involving the reconstruction of a public street and the adjacent sewer system" did not transform a governmental function into a proprietary function. (Doc. No. 24).

{¶11} On June 3, 2020, the trial court filed an entry denying Minster's motion to dismiss with regard to the negligence claim, but granting Minster's motion to dismiss with regard to the breach of contract claim. The trial court reasoned as follows.

> **[T]he court finds that the Complaint filed herein sets forth sufficient allegations that [Minster] directed and controlled [Helms] with respect to the destruction of a sewer line which apparently was not on the mapped portion of the sewer system but was found during the construction project that included both sanitary and storm sewers. There are sufficient allegations that [Minster] exercised discretion in dealing with the unexpected location of the additional sewer line that falls within a proprietary function as it chose to directly exercise the discretion in the performance of the contract as to this unexpected sewer line.**
>
> **The specifics in this case demonstrate that [Minster's] action in exercising its proprietary function was not a part of the contract and the "overarching" project. Instead, this was a new, unexpected matter that was decided and acted upon by [Minster] and its officials. The general rule of connecting all laterals and not blocking pre-existing tile was ignored. If Helms * * * would have simply failed to connect existing pipes on its own accord, [Minster's] role in the overarching project would have been governmental only, and Helms * * * negligence in the manner it dealt with the unexpected pipe would have been solely its problem.**

> **As it stands based upon the face of the allegations, both the contractor [Helms] and [Minster] played a role in exercising discretion on this sewer line and each might be found negligent upon sufficient proof.**

(Doc. No. 25). The trial court concluded that there were sufficient allegations made to negate immunity.

{¶12} Next, the trial court analyzed whether the allegations, if proven, would establish that Minster's actions were reckless and the trial court found that the complaint alleged sufficient facts to warrant, if believed, a conscious disregard or indifference to an obvious risk of harm to property of others.

{¶13} However, the trial court did find that the appellees' breach of contract claim was unsupported "as there was no manifestation of any intention to grant [third-party beneficiary] status to the [appellees] or the general public" in the contract between Minster and Helms. (Doc. No. 25). Thus the trial court granted Minster's motion to dismiss the appellees' breach of contract claim only.

{¶14} Following the denial of its motion to dismiss based on sovereign immunity, Minster filed the instant appeal, seeking review of its immunity claim pursuant to R.C. 2744.02(C). Minster asserts the following assignments of error for our review.

**Assignment of Error No. 1**
**Whether the factual allegations in the Complaint demonstrate that Minster's alleged negligence occurred within the context of a reconstruction project involving the repair and maintenance of a**

**roadway and the reconstruction of adjacent sewer and water lines, both of which are governmental rather than proprietary functions, and for which there are no applicable exceptions to immunity.**

**Assignment of Error No. 2**
**Whether the removal of a single abandoned sewer line constitutes the destruction of a sewer system within the meaning of R.C. 2744.01(G)(2)(d).**

**Assignment of Error No. 3**
**Whether the Village of Minster is entitled to immunity under R.C. 2744.03(A)(5) on the grounds that the damages [appellees] claimed to have sustained are the result of the alleged negligent construction and installation of a trench box and there are no allegations that the trench box was constructed or installed with malice, bad faith, wantonness, or recklessly.**

{¶15} As the assignments of error all address the trial court's denial of Minster's Civ.R. 12(B)(6) motion to dismiss, we will address them together.

*First, Second, and Third Assignments of Error*

{¶16} In its assignments of error, Minster contends that the trial court erred by denying its motion to dismiss the negligence claims brought by the appellees. More specifically, Minster argues that the actions alleged in this matter were governmental rather than proprietary, for which there was no exception to immunity, that the actions regarding the previously unknown sewer line did not constitute the "destruction" of a sewer line within the meaning of proprietary functions under R.C. 2744.01(G)(2)(d), and that even if there was an exception to immunity, it should have been reinstated in this matter under R.C. 2744.03(A)(5)

because there were no allegations in the complaint that the acts were undertaken in bad faith, with malice, wantonly, or recklessly.

## Standard of Review

{¶17} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). For a court to dismiss on this basis, "it must appear *beyond doubt* from the complaint that the plaintiff can prove no set of facts entitling him to recovery." (Emphasis added.) *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. In ruling on a Civ.R. 12(B)(6) motion, the court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). If there is a set of facts consistent with the complaint that would allow for recovery, the court must not grant the motion to dismiss. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). When reviewing a judgment rendered on a Civ.R. 12(B)(6) motion to dismiss, our standard of review is *de novo*, but we still accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ada Exempted Village School Dist. Bd. of Education v. Ada Wind, LLC*, 3d Dist. Hardin No. 6-19-13, 2020-Ohio-4017, ¶ 19, citing *Foreman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist.

Franklin No. 14AP-15, 2014-Ohio-2793, ¶ 9, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

### Sovereign Immunity Framework

{¶18} Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in Chapter 2744 of the Revised Code. Pursuant to the Act, courts engage in a three-tiered analysis to determine whether a political subdivision is immune from liability for damages in a civil action. *Plank v. City of Bellefontaine*, 3d Dist. Logan No. 8-17-18, 2017-Ohio-8623, ¶ 11; *Molnar v. City of Green*, 9th Dist. Summit No. 29072, 2019-Ohio-3083, ¶ 11. The first tier of the analysis establishes generally that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). In the second tier of the analysis, we consider the potential applicability of any of the five exceptions to immunity listed in R.C. 2744.02(B)(1)-(5), which would lift the immunity from the political subdivision. *Plank* at ¶ 11, citing *Jones v. Delaware City School Dist. Bd. of Edn.,* 5th Dist. Delaware No. 2013 CAE 01 0009, 2013–Ohio–3907, ¶ 19. If any of the exceptions in R.C. 2744.02(B)(1)-(5) are applicable to remove immunity from the political subdivision, then we move to the third tier

of the analysis and consider whether immunity can be restored based on the defenses enumerated in R.C. 2744.03. *Id.*; *Molnar*, *supra*, at ¶ 11.

Analysis

**{¶19}** It is undisputed in this case that Minster is a political subdivision. Therefore, pursuant to the first tier of immunity analysis in R.C. 2744.02(A)(1), Minster would generally have sovereign immunity as a political subdivision.

**{¶20}** Turning to the second tier of the immunity analysis, which concerns potential exceptions to the general grant of immunity, appellees asserted, and the trial court found, that an exception to immunity applied in this situation under R.C. 2744.02(B)(2). It reads as follows.

> **(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:**
>
> **\* \* \***
>
> **(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.**

R.C. 2744.02(B)(2).

**{¶21}** Pursuant to the definitions of "proprietary functions" in R.C. 2744.01(G)(2)(d), which the appellees cite in their complaint, "proprietary

-11-

function[s]" specifically include "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]" Appellees alleged in their complaint that "Minster instructed Helms to remove the abandoned sewer line, which constitutes *destruction* of a sewer system pursuant to R.C. § 2744.01(G)(2)(d)." (Emphasis added.) Facially, then, the complaint would appear to assert a negligence claim that relates to a proprietary function under the stated definitions, which falls under a statutory exception to immunity under R.C. 2744.02(B)(2) as cited above.

{¶22} However, Minster contends that its actions in this matter were not proprietary as the trial court found, but rather governmental under R.C. 2744.01(C)(2)(e) and (l). These statutory provisions read as follows.

> **[C](2) A "governmental function" includes, but is not limited to, the following:**
>
> **\* \* \***
>
> **(e) The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds;**
>
> **\* \* \***
>
> **(l) The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system[.]**

R.C. 2744.01(C)(2)(e)/(l).

{¶23} Minster contends that pursuant to R.C. 2744.01(G)(1)(a), a function cannot be proprietary if it has first been expressly defined as being governmental

-12-

under R.C. 2744.01(C)(2). Minster argues that the contract in this case between Minster and Helms clearly intended for the reconstruction of streets and adjacent sewer and water lines, as well as the installation of a sanitary sewer down a portion of Garfield and Second Streets. Minster contends that the additional sewer line was only discovered during the course and scope of the "reconstruction" project. Minster thus argues that the actual project fell under the "governmental function" definition above, and thus the trial court never should have even proceeded to the "proprietary function" definitions regarding the destruction of a sewer system.

{¶24} Contrary to Minster's arguments, when considering the allegations in the complaint in the light most favorable to the appellees, the "destruction" of a sewer line could fall under a proprietary function as defined above in R.C. 2744.01(G)(2)(d). The legislature specifically listed the "destruction" of a sewer system under a proprietary function, while making the construction or reconstruction a governmental function. Minster makes the argument that the destruction of a single "line" is not the same as the destruction of a sewer itself. However, when applying the appropriate standard and inferences in this case, we cannot simply presume that the phrase "abandoned sewer line" is essentially one pipe.

{¶25} Here, the allegations were that once the old sewer lines were discovered, Helms went to Minster and asked what should be done. Minster then

specifically instructed Helms to remove or destroy the old sewer lines. As the trial court reasoned, "this was a new, unexpected matter that was decided and acted upon by [Minster] and its officials." (Doc. No. 25). There is no indication that the original project involved the destruction of a sewer or any sewer lines. The allegations that were pled, then, when accepting them as true *and* drawing all reasonable inferences in favor of the appellees, fall into an immunity exception for a proprietary function.

{¶26} Moreover, as appellees argue in their brief, there is some case authority, albeit not exactly on point, that suggests that the actions here dealing with a sewer line could be proprietary rather than governmental, which would fall under the exception listed above in R.C. 2744.02(B)(2). *See Lancione v. City of Dublin*, 10th Dist. Franklin No. 92AP-244, 1992 WL 249828, *2 ("decisions regarding sewer lines to be tapped into an existing sewer constitute an operation or management of an existing sewer system."); *Sparks v. Erie Cty. Bd. of Cty. Commrs.*, 6th Dist. Erie No. E-97-007, 1998 WL 15929, *6 ("to the extent that appellee acted negligently with regard to the alleged improper tapping of additional sewer lines into the existing sewer system, it may be liable for negligence in performance of that proprietary function."); *City of Salem v. Harding*, 121 Ohio St. 412 (1929) ("The construction of sewers by a city is the exercise of a governmental function, and a board of health in the discharge of its duties acts in the exercise of

the police power of the state, but in the maintenance or destruction of a sewer or any part thereof the city is nevertheless liable for the negligence of its board of health whereby a nuisance is created."). To counter this authority, Minster cites, *inter alia*, this Court's decision in *Wanamaker v. Bucyrus*, 3d Dist. Crawford No. 3-12-02, 2012-Ohio-5232, a readily distinguishable case because it was not decided by a Civ.R. 12(B)(6) motion to dismiss, but rather summary judgment where more was considered than just the complaint.

{¶27} Based only on the complaint, we agree with the trial court, in our *de novo* review, that there are sufficient allegations made to negate immunity in this matter when applying all due considerations regarding motions to dismiss. Thus we must proceed to the third tier of the immunity analysis.

{¶28} Minster argues on appeal that even if we determined that appellees alleged sufficient facts to establish that their injuries were the result of a proprietary function, Minster's immunity should be reinstated under R.C. 2744.03(A)(5), which reads as follows.

> **(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:**
>
> **\* \* \***

**(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.**

{¶29} Minster contends that the construction of the trench box in this case amounted to the use of a piece of equipment, and that "the decision to utilize and install a trench box constituted the positive exercise of judgment portraying the considered adoption of a particular course of conduct in relation to the removal of the abandoned sewer line." (Appt.'s Br. at 15). Minster argues that there were no allegations whatsoever that the construction of the trench box was malicious, in bad faith, wanton, or reckless, therefore Minster was entitled to the reinstatement of immunity.[3]

{¶30} Importantly, Minster's argument focuses on the construction of the trench box, rather than Minster's decision to remove the sewer line itself, seemingly without further inspection as to whether it was providing some utility, or whether its removal might cause issues. At the very least we must presume as much, and make all reasonable inferences that way when construing the Civ.R. 12(B)(6) motion.

---

[3] As the appellees note in their brief, the bad faith, willful, wanton, or reckless conduct only comes into play if it was determined that there was a specific exercise of judgment or discretion as defined above.

{¶31} Regardless, even when considering the trench box, the facts pled could establish a "conscious disregard" or "indifference" to obvious risks of harm, even if the actor did not desire harm, which would constitute recklessness. *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraph four of the syllabus. Here, the trial court found that there were sufficient allegations to warrant, "if believed, a finding that the actions of [Minster] through its agents was a conscious disregard of or indifference to an obvious risk of harm to the property of others by not reconnecting that which was found and cut through by the work being done." (Doc. No. 25). After conducting a *de novo* review of the complaint and the applicable legal authority, we agree with the trial court. Therefore Minster would be unable to reinstate immunity in this matter under R.C. 2744.03(A)(5) based solely on what is before us.

{¶32} In sum, at this very early stage of the proceeding, we are unable to find that it is "beyond doubt from the complaint that the plaintiff[s] can prove no set of facts entitling [them] to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), at syllabus. This is not a finding that Minster is necessarily liable or even that immunity could not be established later in a summary judgment proceeding if undisputed facts warranted such a finding. But at this stage of the proceeding, given our standard when analyzing a Civ.R. 12(B)(6) motion, we

cannot find that the trial court erred by overruling Minster's motion to dismiss. Therefore, Minster's first, second, and third assignments of error are overruled.

*Conclusion*

{¶33} For the foregoing reasons, Minster's assignments of error are overruled and the judgment of the Auglaize County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**